In the Matter of the Accounting of GUARANTY TRUST COMPANY OF NEW YORK, as Substituted Trustee of the Will of ELMER E. SMATHERS, Deceased, Respondent. HARRIET B. MYERS, Appellant; J. HARVEY TURNURE, as Special Guardian, et al., Respondents.

Argued November 15, 1955; decided January 12, 1956.

*Richard H. Levet* and *William B. Levet* for appellant.  I. The burden is upon the trustee to show that it is entitled to extra commissions under the statute.  (*Mumford* v. *Murray*, 6 Johns. Ch. 1; *Matter of Corning*, 160 Misc. 434.)  II. The plain unam-

biguous words of the statute and the basic canons of statutory construction preclude the allowance of extra commissions to the trustee. (*People* v. *Ryan,* 274 N. Y. 149; *People* v. *Shahun,* 251 N. Y. 107; *Matter of O'Neil,* 91 N. Y. 516; *Matter of Chase Nat. Bank* v. *Guardian Realties,* 283 N. Y. 350; *People* v. *Dethloff,* 283 N. Y. 309; *Cooper-Snell Co.* v. *State of New York,* 230 N. Y. 249; *Matter of Manufacturers Trust Co.* v. *Ralph,* 276 App. Div. 118, 300 N. Y. 411.) III. Under the terms of the lease, the ultimate responsibility for management of the realty rests upon the tenant, not the trustee; and the trustee has neither managed nor become entitled to manage the real property. IV. The case of *Matter of Brennan* (251 N. Y. 39) is distinguishable from this case, is not applicable to it, nor determinative of the issues of this case. There are substantial and decisive differences between the facts involved in the Brennan estate lease and the facts involved in the Smathers estate lease, and the cases are distinguishable by reason of the different wording of the statutes involved. V. Statements or comments made in the *Brennan* opinion with respect to the merits of the then effective 1923 statute did not take on the character of a legally effective precedent, but rather were made as obiter dicta and should now be treated as such. (*Rolfe* v. *Hewitt,* 227 N. Y. 486; *Matter of Broderick* v. *City of New York,* 295 N. Y. 363; *Sterling* v. *Constantin,* 287 U. S. 378; *O'Donoghue* v. *United States,* 289 U. S. 516; *Osaka Shosen Line* v. *United States,* 300 U. S. 98; *Crane* v. *Bennett,* 177 N. Y. 106.)

*Walter D. Fletcher, Edward I. Devlin, Andrew Y. Rogers, Laurence A. Spelman* and *Gavin Miller* for Guaranty Trust Company of New York, respondent. I. Respondent trustee had the right and duty to manage the real property in question so that, as a matter of law, it is entitled to the additional commissions given by subdivision 7 of section 285-a of the Surrogate's Court Act. (*Matter of Brennan,* 251 N. Y. 39.) II. The lease in the present case, though not paralleling in all respects the provisions of the lease in the *Brennan* case, nevertheless gives the trustee rights and duties, which clearly bring the present case within the principle enunciated in the *Brennan* case because they are the rights and duties which, present in the Brennan lease, dictated the result in that case. III. The

alterations in the relevant portions of section 285-a of the Surrogate's Court Act are purely formal and do not render the *Brennan* case distinguishable. IV. The decision in *Matter of Brennan* was not dictum. The decision on the point at issue in the *Brennan* case was one of two independent grounds on which the decision of this court could have rested. In such a situation neither of the two grounds considered in the decision can be considered dictum. (*O'Brien* v. *Union Central Life Ins. Co.*, 207 N. Y. 180; *Matter of Broderick* v. *City of New York*, 295 N. Y. 363; *Matter of Sidenberg*, 147 Misc. 742; *Matter of Byrnes*, 159 Misc. 302.) V. The decision is *Matter of Brennan* should be upheld as a valid and correct enunciation of law. (*Matter of Cole*, 235 N. Y. 48; *Pouch* v. *Prudential Ins. Co. of America*, 204 N. Y. 281; *Matter of Trosk* v. *Cohen*, 262 N. Y. 430; *Matter of Scheftel*, 275 N. Y. 135; *Matter of Popp*, 123 App. Div. 2.) VI. There has been no practical construction of subdivision 7 of section 285-a of the Surrogate's Court Act by the conduct of respondent trustee.

*Burton C. Meighan, Jr.*, special guardian for Sidney S. Bradfield and others, infants, respondents.

FROESSEL, J. On this appeal, we are asked to decide whether, under subdivision 7 of section 285-a of the Surrogate's Court Act, a testamentary trustee is entitled to retain, in addition to normal commissions under the preceding subdivisions of said section, extra commissions of 6% on gross rents collected under the 99-year net lease made by the testator, where there was no evidence of any specific acts of management by the trustee.

Elmer Ellsworth Smathers died in 1928, leaving a last will and testament dated December 11, 1926, which was duly admitted to probate by the Surrogate's Court of Westchester County. Thereafter, on December 5, 1930, letters of trusteeship were duly issued to Guaranty Trust Company of New York (hereinafter called Guaranty), as substituted trustee, in which capacity it has continued to serve. Among the assets of the estate were certain premises known as 18 Broadway, New York City, which were then and are now occupied by Standard Oil Company of New York (hereinafter called Standard Oil) under a lease, commencing on March 1, 1920, and continuing until the last day of February, 2019. This lease was negotiated by the

testator himself, and provided for a yearly rental of $250,000, payable in quarterly installments of $62,500.

As substituted trustee, Guaranty filed four intermediate accounts covering the period from December 5, 1930, to April 15, 1948, all of which were settled and allowed by the Surrogate's Court. The present dispute arose over items contained in the fifth intermediate account which covers the period from April 15, 1948, to April 15, 1953. This account shows the regular receipt of rents from 18 Broadway at the rate of $62,500 quarterly, making a total collection for this last accounting period of $1,250,000. Pursuant to subdivision 2 of section 285-a of the Surrogate's Court Act, the trustee has retained regular commissions on these collections in the amount of approximately $25,000, to which no objection has been made.

For the period from January 1, 1949, to June 30, 1953, Guaranty for the first time retained *additional commissions* in the amount of $7,500 semiannually, making a total of $67,500 " Total Extra Commissions ". It is the retention of these extra commissions to which appellant, an income beneficiary, objects. Guaranty claims that it is entitled to this extra compensation under subdivision 7 of section 285-a of the Surrogate's Court Act, which provides: " Where a trustee *is* for any reason or cause whatsoever entitled or required to collect the rents of *and manage real property,* the net amount of rents collected and not the gross amount shall be used in making computation of commissions allowed by subdivision two hereof, and *in addition* to the commissions hereinbefore provided he shall be allowed and may retain *for such services* six per centum of the gross rents collected, but there shall be only one such additional commission regardless of the number of trustees. In the event that there are two or more trustees the additional commission herein provided for must be apportioned among them according to the *services rendered* by them respectively." (Emphasis supplied.) Appellant contends that under the terms of the lease and will in this case the trustee is neither required, nor entitled, to manage said property, and has not done so, and therefore is not entitled to management commissions under the provisions of subdivision 7.

The lease is a net lease. Standard Oil, the tenant, is by its terms granted exceedingly substantial rights which make it the

virtual owner of the property, subject only to certain contingent rights in Guaranty, the successor to the original landlord's rights. Among the rights and obligations of the tenant are the following: It assumed the performance of all covenants and conditions required to be kept by the *landlord,* " the intention of the parties " being that " the Landlord shall be relieved of all obligations respecting the premises, and *shall relinquish all control over the management of employees and the operation of the premises,* and that the Tenant shall, for all purposes, *assume* the Landlord's rights, privileges and obligations in reference thereto " (emphasis supplied); the tenant is to make all repairs and furnish all new fixtures and equipment at its own expense; in case of fire, the tenant waived all rights to an abatement of rent; it agreed to indemnify the landlord against liability for personal injury or property damage " arising out of the use, occupation, management or control of said premises "; there is no restriction against assignment or subleasing; the tenant may make party wall agreements, and may demolish. all existing structures and rebuild without abatement of rent, without the landlord's consent or approval, and may use the premises for any lawful purpose; it is required to pay, in addition to rent, all taxes, assessments, water rents, utility and other charges, and remove all liens against the premises.

In case of nonpayment of rents, taxes, assessments, liens, or in the event of bankruptcy, insolvency, or abandonment of the premises, the landlord may remove the tenant by summary proceedings, re-enter and re-let the premises. There has been no default, actual or threatened.

The only evidence introduced at the hearing was the lease and the will. Guaranty expressly declined to introduce evidence showing any specific acts of management on its part. The Surrogate, though recognizing that the lease in this case was not the same as the lease in *Matter of Brennan* (251 N. Y. 39), held that the " assumption and *exercise* " of the " *ultimate responsibility* " for the administration of the demised premises " constitutes management within the meaning of the statute " (emphasis supplied), and dismissed the objections. The Appellate Division, which affirmed the Surrogate but granted leave to appeal to us, also recognized that the lease " contained provisions by which the landlord was *relieved of all obligations*

*with respect to the management and control of the premises,* and by which those obligations were assumed by the tenant'' (emphasis supplied). It nevertheless likewise felt itself bound by the *Brennan* case (*supra*). In our opinion, the lower courts erred in assuming that *Matter of Brennan* was controlling, since we are here concerned with a differently worded statute and a different fact pattern, as we shall presently point out.

At common law, executors and trustees served without compensation (*Matter of Schinasi,* 277 N. Y. 252, 258; *McWhorter* v. *Benson,* 1 Hopk. Ch. 28, 32, 40 [1823]; *Green* v. *Winter,* 1 Johns. Ch. 26, 37 [1814]; Bogert on Trusts and Trustees, Vol. 4, pt. 2, p. 354, § 974). In 1817 a statute was enacted enabling the Court of Chancery to make a reasonable allowance for the services of guardians, executors and administrators (*McWhorter* v. *Benson, supra*), but it was not until 1866 that an act was passed which expressly provided that trustees were entitled to the same commissions (*Matter of Roosevelt,* 5 Redf. 601, 607–608 [1882]).

The more recent enactments may be briefly noted. By chapter 649 of the Laws of 1923, section 285 of the Surrogate's Court Act was amended to provide: '' Commissions of executor, administrator, guardian or testamentary trustee. * * * Where a trustee or executor is, by the terms of the instrument, required to collect the rents and manage real property, he shall be allowed and may retain, five per centum of the rents collected therefrom, in addition to the commissions herein provided.'' By chapter 892 of the Laws of 1934, the provision relating to additional commissions was again amended, and it became subdivision 9 of section 285 and provided: '' 9. Where an executor, administrator, guardian or testamentary trustee is, for any reason or cause whatsoever, entitled or required to collect the rents of and manage the real property, he shall be allowed and may retain five per centum of the rents collected therefrom in addition to the commissions herein provided.'' By chapter 694 of the Laws of 1943, the provisions relating to trustees were placed in the new section 285-a, and subdivision 6 of that section was in somewhat similar form (with some exceptions not here material) to present subdivision 7 as enacted in 1948 (L. 1948, ch. 582), quoted above and with which we are now concerned.

This subdivision in its present form has not heretofore been considered by us. In interpreting a statute, it is of course well settled that we must be guided by the rule that where the language is clear and unambiguous, the intent of the framers is to be first sought in the words and language employed and, if the words plainly and clearly express the sense of the framers, there is no reason to resort to other means of interpretation (*Matter of Daniman* v. *Board of Educ. of City of N. Y.*, 306 N. Y. 532, 543; *Meltzer* v. *Koenigsberg*, 302 N. Y. 523, 525; *Matter of Rathscheck*, 300 N. Y. 346, 350).

Turning, then, to subdivision 7 of section 285-a, it clearly appears that the 6% commission on gross rents collected and here claimed is " *in addition to* " the regular commissions on net rents " collected ", as allowed by subdivision 2 (see *Matter of Schinasi, supra,* pp. 263–264; *Matter of Sidenberg,* 147 Misc. 742, 750). These additional commissions are obviously meant to be compensation for additional services, *to wit,* for the *management* of real property in addition to the collection of rents. The statute plainly indicates that the additional commissions may be retained " for such services ". Furthermore, if there is more than one trustee, the additional commissions must be apportioned " according to the services rendered " by them. Thus, if one trustee performs all " such services ", he would be entitled to all the additional commissions, and his cotrustees would receive nothing; and so, if no trustee performs any " such services ", no additional commissions may be retained. The words " manage " and " services " connote activities, and indicate that the Legislature required some definite action on the part of the trustee " in addition to " the mere passive receipt or collection of rents. Subdivision 2 of section 285-a does not use the word " manage " or " services ", but simply provides that " A trustee shall * * * be entitled to commissions from the income of the trust " at designated percentages on the " income collected ".

Respondent urges that in the event Standard Oil defaults in the payment of rent, liens or taxes, it *may* have to re-enter the premises. We do not think that anticipatory action, however remote, without more, can be equivalent to the management required by subdivision 7. The mere collection of rents here does not involve any more action than collection of interest on

a bond or mortgage, or dividends on stock, and does not, therefore, constitute management. If the Legislature had intended allowing trustees an additional 6% of the gross rents collected merely for the receipt thereof, without the necessity of engaging in some form of active management, it would have said so.

Respondent Guaranty relies heavily on *Matter of Brennan* (251 N. Y. 39, *supra*). Aside from the fact that when we there held that the Surrogate had no power to modify his own decree that disposed of the appeal, our further discussion with respect to the allowance of additional commissions does not sustain the respondent's position on this appeal for the following reasons:

(1) The language of the present section 285-a is different from that of former section 285 as it read when the *Brennan* case (*supra*) was decided in 1929. The phrases " for such services " and " according to the services rendered by them ", heretofore adverted to, were added by the 1943 and 1948 amendments. Respondent glosses over this by merely stating that these amendments are of a purely formal nature and have no bearing on the question here before the court. To the contrary, we think these additions are most significant. It is well settled that in the interpretation of a statute we must assume that the Legislature did not deliberately place a phrase in the statute which was intended to serve no purpose (*Matter of Zellner* [*Brooklyn Trust Co.*], 299 N. Y. 243, 247; *People* v. *Dethloff*, 283 N. Y. 309, 315), and each word must be read and given a distinct and consistent meaning (*New York State Bridge Auth.* v. *Moore,* 299 N. Y. 410, 415–416; *Palmer* v. *Van Santvoord,* 153 N. Y. 612, 616). The only reasonable conclusion that can be reached is that the Legislature clearly intended — and so indicated — that the extra compensation for management can be retained only " for such services ", i.e., for the active performance of the duties and obligations connected with the real property, and not for just " general responsibility " remotely dependent " on future contingency " as respondent contends.

(2) The fact pattern in the *Brennan* case (*supra*) is clearly different from that in the case at bar, and what is said in a judicial opinion must be confined by the facts of the case in which it was uttered (*Crane* v. *Bennett,* 177 N. Y. 106, 112). It is true that in both leases a number of the standard contingent clauses are similar, as, for example, the tenant was required to pay all taxes

and liens; and the landlord reserved the customary right to pay these charges if the tenant defaulted and to treat them as additional rent, for the default of which the landlord reserved the right of re-entry. Both leases also contain the usual provisions for re-entry if the tenant becomes insolvent.

However, there are substantial differences in the remaining essential clauses of the two leases which establish that the Brennan trustee had many duties which it had necessarily to fulfill, as, e.g., the Brennan lease was negotiated by the trustee, a very active duty in itself, whereas the subject lease was negotiated by the testator himself ten years before Guaranty had any interest in this property; the use of the Brennan property was severely restricted to the operation of a theatre and studio, whereas Standard Oil may use the property for any lawful purposes; the landlord could enter upon the Brennan premises and make repairs; the Brennan tenant could not assign the lease without the written consent of the trustee; if the building be totally or partially destroyed, the Brennan tenant was to be discharged, while Standard Oil will still remain liable for the rent; the Brennan tenant had to prepare plans and submit them to the landlord before he could make any alterations, and also had to secure a bond to cover the cost; and, most significant, there is no release clause in the Brennan lease comparable to that in the subject lease, which provides, as hereinbefore more fully noted, that the "*Landlord shall be relieved* of all obligations respecting the premises, and *shall relinquish all control over the management* of employees and *the operation of the premises*." (Emphasis supplied.)

Thus, under the Brennan lease, the trustee had continuing rights and duties of management which do not appear in the present lease. Indeed, if ever there were a lease where the landlord had virtually nothing to do but collect rent, this is such a case. As we said in the *Brennan* case (*supra*), it is the "*exercise*" of responsibility for "directing, supervising, overseeing, administering and controlling the property" that "constitutes management within the intent of the statute" (p. 44). The evidence here is that Guaranty did nothing beyond receiving the rent.

In this case, Guaranty has already retained for the accounting period approximately $25,000 in regular commissions for the

collection of rent for these premises which, to all intents and purposes, are owned by the tenant for a period of 99 years. It now seeks an additional $67,500 for performing the *same* acts, and justifies this by claiming that at some future time it *may* have to render active service. If we adopt this view, all trustees would automatically be entitled to charge, for the mere collection of rents, an additional 6% based on the gross rents collected, and there would be no case in which a trustee could be denied this additional compensation. That result in the instant case would mean that the trustee would receive additional commissions of close to a million dollars for the remainder of the lease; and for its total commissions on this property it could retain an entire year's rent ($250,000) out of every 12½ years' income. Upon this record, it seems clear to us that respondent has no proper claim to the additional commissions under the statute.

The order of the Appellate Division appealed from should be reversed, the decree of the Surrogate modified by sustaining the objections of the appellant, disallowing to respondent additional commissions under subdivision 7 of section 285-a of the Surrogate's Court Act, and the matter remitted to the Surrogate for further proceedings not inconsistent with this opinion, with costs in all courts to the appellant payable out of the estate.

CONWAY, Ch. J., DESMOND, FULD, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Order reversed, etc.