In the Matter of the Estate of LEON SCHINASI, Deceased. RUBY SCHINASI, Appellant-Respondent. BANKERS TRUST COMPANY, Respondent-Appellant, and HAROLD SMITH, as Executor of LEON SCHINASI, Deceased, et al., Respondents.

First Department, July 3, 1956.

*Harold H. Corbin* of counsel (*Edward J. Bennett* and *David E. Pitcher, Jr.,* with him on the brief; *Corbin, Bennett & Delehanty,* attorneys), for appellant-respondent.

*Joseph M. Callahan* of counsel (*Joseph A. Doran, Thomas Kiernan, J. Adam Murphy* and *Haliburton Fales, 2d,* with him on the brief; *White & Case,* attorneys), for respondent-appellant.

*Frederick vP. Bryan,* special guardian, of counsel (*William Hughes Mulligan* and *Martin Fogelman* with him on the brief), for Robert S. M. Goldsmith and another, respondents.

RABIN, J.   Bankers Trust Company (hereinafter referred to as " Bank ") individually and as executor and trustee under the will of Leon Schinasi, deceased, appeals from so much of a decree of FRANKENTHALER, S., entered November 15, 1955 as granted petitioner's application to reopen and vacate two prior decrees of the Surrogate's Court settling the account of the Bank as executor and one decree settling accounts as trustee. The decree appealed from surcharged the Bank $111,253.93 plus interest at 6% representing rental commissions found to be improperly charged and retained by it as fiduciary in this estate. The decree also granted the application of the Bank for permission to resign as trustee and revoked its letters of trusteeship upon settlement of its accounts.

Ruby Schinasi, the petitioner, is the widow of the testator, the coexecutor and cotrustee and the principal life beneficiary under the will. She cross-appeals from so much of the decree as denied her application to remove the Bank as trustee and permitted it to resign; denied the application to refund all compensation received by the Bank as fiduciary; and failed to allow compound interest on the amounts surcharged against the Bank.

The special guardian, representing two infants who are grandchildren of the testator and remaindermen of the trusts

created under the testator's will, does not appeal but urges affirmance of the decree below.

The basis of the petitioner's application to reopen the decrees on accounting and to remove and surcharge the Bank as trustee, is the claim that in prior accounting proceedings the Bank wrongfully appropriated a commission of 5% for collecting rents. This claim is predicated on the contention that the Bank fraudulently concealed from the court and the interested parties a contract, in the form of a letter from it to the testator, where the Bank agreed to render services as executor and trustee for a limited compensation which should be construed as covering all services rendered by the Bank, including its acting as agent in the management of real property, and barring any claim for rental commissions.

Decedent, at the time of his death on August 16, 1930 had a gross estate of more than $6,000,000, the largest single asset of which was his controlling stock interest in Schinasi Commercial Corporation, a holding company owning improved real estate in New York City valued in excess of $3,000,000. Prior to his death, decedent contacted several banking institutions for the purpose of securing one that would act as executor and trustee of his estate at less than the statutory fees. On February 11, 1930 he executed his will in the offices of Chadbourne, Stanchfield & Levy. Article SEVENTEENTH of this will names the Bank as coexecutor and cotrustee with the following provision: "The above designation of Bankers Trust Company as an Executor of and as a Trustee under this my Last Will and testament is made upon the condition that, and shall be effective only if, the said Bankers Trust Company shall agree that as to said estate the commissions for the receipt and disbursements of principal and income thereof payable to said Bankers Trust Company shall be at the rate of one and one-half percentum upon said principal and said income; and that as to said trust funds the commissions for the receipt of income therefrom to said Bankers Trust Company shall be at the rate of one and one-half percentum upon said income and the commissions for the receipt and disbursement of principal thereof payable to said Bankers Trust Company shall be at the rate of one percentum upon said principal, payable at the termination of each trust." Article SEVENTEENTH also provides that if the Bank did not accept the appointment upon the aforesaid conditions, the Surrogate should appoint another trust company to act in the place of the Bank upon the same conditions, if possible.

After executing his will, decedent took it away with him and on the same day called at the office of H. F. Wilson, senior vice-president of the Bank in charge of its personal and corporate trust department. On that day, decedent gave his will, sealed in an envelope, to Wilson who put it in the Bank's vault.

At the same time, Wilson wrote the following letter to decedent:

"February 11, 1930

Mr. LEON SCHINASI
2 East 57th Street
New York City

DEAR MR. SCHINASI:

Referring to our conversation when we had the pleasure of your visit here today, we shall be glad to act as Executor and Trustee under your Will, which I understand has just been executed and appreciate the compliment which you pay us in favoring us with this appointment. We confirm the rates which we quoted to you for our services, i.e.—

As Executor—1-½% on the value of the Estate
As Trustee—1% on termination of the trust, and 1-½% per annum on the *distribution of* income

These rates, as you know, are less than the statutory fees allowed in New York State and we request that you treat this arrangement as confidential between us.

Hoping that we may not be required to do more than hold the Will here for safekeeping subject to your order for a great many years, and that meanwhile you will find it convenient to make use of our services in any of the departments which are mentioned on the enclosed statement, believe me,

Very sincerely yours,
H. F. W.
Vice President

HFW MWC
16
Encls."

(The words " distribution of " italicized *supra* were in Mr. Wilson's own handwriting.)

The Surrogate properly found on the evidence that the original of this letter was mailed to decedent. Copies of the letter were placed in the Bank's files. The will and "Sealed envelope said to contain letter of H. F. Wilson, Jr. regarding

fees '' were put in the Bank's vault and there remained until after decedent's death. Petitioner contends that the original of the Wilson letter was in the vault and suggests that that letter was destroyed by the Bank. There is no basis in the evidence for such a conclusion.

The will was probated in September, 1930 and the Bank then learned that the bulk of the decedent's property consisted of real estate owned and operated by his holding company, Schinasi Commercial Corporation. Upon dissolution of this corporation as provided for in the will, the Bank took over management of the real property. After consultation among its officers and with its counsel, the Bank decided that it was entitled to the 5% commission allowed for the management of real property by section 285 of the Surrogate's Court Act, over and above the regular executors' and trustees' commissions. Until this proceeding, no objection was made by anyone to the Bank's taking rental commissions, although in the meantime three intermediate accounts were approved. In fact, the other trustees, including petitioner, sought to obtain such commissions also but were refused by the Surrogate in view of the limitations imposed on them by the terms of the will.

Admittedly, the Bank made no disclosure or mention of the letter regarding fees to anyone outside its own office. It was not called to the attention of their own attorneys nor was its existence revealed to the Surrogate at the time of the intermediate accountings. The explanation given by the Bank's officers for this failure to disclose the letter is that, despite the fact that the letter referred to '' services '' rather than the word '' commissions,'' they considered it of no importance once the terms of the will had become known because, they urge, their right to fees under the letter was no different than under the will. The will as has been indicated, although containing language somewhat different from the letter, contained the same limitations as to the rate of commissions as did the letter.

Despite the unsupported claim of petitioner that the original Wilson letter was destroyed by the Bank, the Bank nevertheless in 1950 at the request of petitioner's new counsel (it is not clear what occasioned this request after a lapse of some twenty years) produced from its files copies of the Wilson letter. The present proceeding based upon allegations of fraud followed. The learned Surrogate has found that there was a deliberate effort on the part of the Bank to conceal the existence of the Wilson letter thus enabling it to collect commissions unlawfully.

We do not think the record before us supports the finding of the Surrogate that the Bank through its several officers was guilty of fraud and that its officers deliberately suppressed the letter. There can be no question that, as a fiduciary, it was the Bank's duty to disclose the Wilson letter at the time of the intermediate accountings. Failure to do so apparently resulted from the Bank's decision not to present to the Surrogate— except in the credit given to itself for rental commissions in the accountings—the specific issue as to whether the Bank was entitled to real estate commissions. That issue should have been squarely presented to the Surrogate and in that connection the letter should have been produced. It was bad judgment on the part of the Bank's officers to decide for themselves that they were entitled to rental commissions. However, that is something far short of fraud or the withholding of evidence with fraudulent intent. On all the evidence in this case, we reach the conclusion and find that the Bank was not guilty of fraud in failing to disclose the letter.

In the absence of such fraud, the Bank asserts that there is no basis for reopening the prior decrees and it must be said that the issue as to the Bank's right to rental commissions, in addition to the regular executors' commissions, has been adjudicated. However, in view of our finding that the Bank should have squarely presented that issue together with the letter, at the time of the intermediate accountings, we have no hesitancy in charging the Bank now with whatever limitations the letter placed upon it.

We thus reach the controlling point in this case, namely, the construction to be given to the Wilson letter. It may be noted incidentally that if that letter did not preclude the Bank from taking the 5% commission for real estate management, it becomes immaterial whether there was a failure to disclose it. It is not disputed that the Bank is bound by the Wilson letter if in fact that letter limited the Bank to the stated rates for all services including rental collection and realty management (*Matter of Hopkins*, 32 Hun 618, affd. 98 N. Y. 636; *Matter of Glenn*, 231 App. Div. 681, affd. 258 N. Y. 536; *Matter of Hayden*, 172 Misc. 669, affd. 261 App. Div. 900, motion for leave to appeal denied 285 N. Y. 859). And the force of the letter in the definition of the Bank's compensation is not affected by the will even if the terms of the latter be considered inconsistent with the former (*Matter of Hayden, supra*).

The question which remains, therefore, is whether the letter works the delimitation of fees as contended by petitioner and

the special guardian. The letter confirms rates quoted by the Bank " for our services ". The Bank contends, and we think correctly, that the " services " referred to are those of the Bank as executor and trustee. Wilson first expressed the Bank's pleasure " to act as Executor and Trustee under your Will," and then stated that:

" We confirm the rates which we quoted to you for our services, i.e.—

As Executor—1-½% on the value of the Estate
As Trustee—1% on termination of the trust; and 1-½% per annum on the *distribution of* income ".

As the letter apparently contemplated implementing the previously executed will, it is significant that the will likewise talks of the Bank as an executor and trustee to be paid therefor by commissions. We reject the contention that the Bank bound itself to perform any and all services, irrespective of how unrelated to its status and obligations as an executor or trustee, for the quoted rates; the more reasonable construction of the proof, we think, is that the letter was written with a view to committing the Bank to act as executor and trustee in accordance with the terms of the will.

Whatever may be the utimate responsibility of an executor or trustee for the management of estate realty and collection of rents therefrom (cf. *Deegan* v. *Deegan,* 247 App. Div. 340, with *Matter of Baker,* 164 Misc. 92), in the absence of an express testamentary direction it is not incumbent upon the executor or trustee personally to perform such services (*Lent* v. *Howard,* 89 N. Y. 169, 179; *Matter of Byrnes,* 159 Misc. 302, 307). The actual management and rent collection are delegable (*Matter of Whipple,* 19 N. Y. S. 2d 105), and the costs incurred by an executor or trustee for such services are properly to be reimbursed by the estate (*Collier* v. *Munn,* 41 N. Y. 143; *Matter of Binghamton Trust Co.,* 87 App. Div. 26; *Matter of Althause,* 122 Misc. 279). If the trustee or executor undertakes to perform the role of managing and collection agent, then, at least since 1923, by statute he is entitled to additional compensation at a fixed rate as well as the commission otherwise regularly allowed the trustee or executor (Surrogate's Ct. Act, § 285-a, subd. 7; *Matter of Schinasi,* 277 N. Y. 252; *Matter of Brennan,* 251 N. Y. 39). The Court of Appeals recently observed that the additional commissions thus allowed by the Legislature " are obviously meant to be compensation for additional services, *to wit,* for the *management of* real property

in addition to the collection of rents" (*Matter of Smathers,* 309 N. Y. 487, 494, emphasis in original). Active realty management and rent collection are, therefore, recognized as functions usually performable by a fiduciary in its discretion, but not as duties inherently attached to the office of trustee or executor. A fiduciary may voluntarily undertake many activities for an estate, ranging from clerical to manual to business activities, without thereby transmitting those efforts into the services and duties of the position. Such activities, as that of realty management, are in addition to the regular duties and services of the fiduciary. We therefore conclude that when the Wilson letter fixed compensation for " our services " as a fiduciary, it did not thereby determine the compensation to which the Bank was entitled for its additional services with respect to the realty. The Bank was accordingly entitled to collect, as it did, commissions pursuant to section 285 of the Surrogate's Court Act.

Although the notice of appeal of the Bank does not specifically exclude the allowance to the special guardian, that allowance appears not to be questioned before this court.

The decree, insofar as appealed from by the Bank, should be reversed (except as to the allowance to the special guardian) on the law and the facts and the petition dismissed, without costs. Insofar as the decree is appealed from by petitioner Ruby Schinasi, it should be affirmed, without costs.

Cox, J. (concurring). In order to ascertain the meaning and the intended effect of the letter of February 11, 1930, it must be considered in its proper perspective. Undoubtedly the letter was intended to serve some purpose or else it would not have been written. What it was to accomplish and what the testator and the Bank understood it to mean clearly appears when the letter is read in the light of the surrounding circumstances.

The letter was written shortly after the testator had executed a will in which the Bank was designated as an executor and trustee conditioned upon its agreement to accept less than the statutory rate of commissions. Apparently the testator entertained some doubt as to the Bank's acceptance of the condition because he provided that the Bank's designation was to be effective only if it agreed to the lower rate of commissions specified in the will and that if it failed to accept the terms of its designation the Surrogate was to appoint a bank that would agree to accept them.

These provisions of the will suggest that the uppermost thought in the mind of the testator when he visited the offices of the Bank was whether the Bank would be willing to accept the

terms attached to its designation. That this was the topic of his conversation with Mr. Wilson is revealed by the opening sentence of the letter which, after referring to the conversation, states that the Bank would be glad to act as executor and trustee under the will that the testator just executed. The letter then goes on to confirm the rates of compensation the Bank was to receive for its services in both capacities.

The only significant difference between the letter and the will is that the letter contains the word " services " and the will does not. The will merely refers to fiduciary commissions which do not encompass payment for services rendered in the management of real estate. Consequently the basic issue is whether the word " services " as used in the letter was intended to mean all services, i.e., those which fall within as well as without the body of services for which the normal fiduciary commissions are allowed. The meaning to be given the word " services " naturally depends on what the parties had in mind and what they understood it to mean in the context and under the conditions that the word was used.

There is no evidence that the management of real estate was either considered or discussed by the testator or Mr. Wilson before the letter was written. Concededly, Mr. Wilson did not read the will and he was unaware of the provision directing liquidation of the real estate holding corporation. There is no proof that the Bank or Mr. Wilson had knowledge of the testator's real estate interests or that as a fiduciary the Bank would be required to operate real property. Nor was there anything to indicate to Mr. Wilson that the Bank's fiduciary duties might entail the rendition of anything more than the ordinary services which are compensated by normal commissions. It therefore follows that he intended " services " to mean the usual type of services and was not to include the extraordinary service of real estate management for which additional compensation is allowed.

That the testator so understood the term seems clear. As we have seen the testator visited the Bank immediately after executing his will, not knowing whether the Bank would agree to the limitation he had placed upon the commission it was to receive. In these circumstances it would be unreasonable to assume that he had called upon the Bank for the purpose of having it agree to less than what he himself had just decided the Bank should receive.

Presumably the testator was aware of the fact that the Bank might undertake the management of the real property and thus become entitled to additional compensation, yet he made no

provision in the will to preclude a claim for such compensation. Had he intended to bargain with the Bank with respect to it, it is reasonable to assume that he would have reversed his procedure and obtained a commitment from the Bank before executing his will.

Furthermore, there is nothing to suggest that the testator considered the letter an effective waiver by the Bank of any claim for a real estate management allowance. Nor is there anything to indicate that he intended to have the Bank waive such compensation. The testator was deeply concerned about commissions as is evident by the conditions he imposed in designating the three individuals who were to serve as cofiduciaries of the Bank. If the testator regarded the letter of February 11, 1930 as constituting a waiver he undoubtedly would have preserved the original of the letter which was mailed to him because he was fully aware of the value of such a waiver. He was then paying an annual salary of $4,800 to the person in charge of the operation of his real estate. On the other hand, if the Bank had retained the original as the respondents contend, then he surely would have made a note of it. The fact that neither the original letter nor any notation of it was found among the testator's records is significant. It clearly indicates that he considered the letter of no material importance and that he understood it to mean nothing more than what it was intended to be, namely, a written expression of the Bank's willingness to accept the conditions of its designation as set forth in the will.

Accordingly, I concur with the reversal of the decree insofar as appealed from by the Bank (except as to the special guardian's allowance) and the dismissal of the petition. The decree insofar as appealed from by the petitioner should be affirmed. Both dispositions to be without costs.

PECK, P. J., FRANK and VALENTE, JJ., concur with RABIN, J.; Cox, J., concurs in opinion.

Decree insofar as appealed from by the Bank, unanimously reversed on the law and the facts and the petition dismissed, without costs. Insofar as the decree is appealed from by the petitioner Ruby Schinasi, it is unanimously affirmed, without costs. Settle order on notice.