S. Samuel Di Falco, S.
In this proceeding for the settlement of the account of the trustees of the residuary trusts the special guardian for infant objectants has interposed an objection to the allowance of management commissions (Surrogate’s Ct. Act, § 285-a, subd. 7) retained by the accountants in connection with the income derived from the lease of real property held in the ownership of the trust estates and administered in solido. The guardian, relying upon the recent decisions of the Court of Appeals in Matter of Smathers (309 N. Y. 487) and Matter of Burrows (3 N Y 2d 869) directs his objection specifically to a net lease covering premises located in Tulsa, Oklahoma, owned by the trustees as tenants in common with the deceased’s surviving partner and rented to J. C. Penney Company for a term which will expire on January 31, 1961.
In the cases upon which the objectant relies, the court took the position that the ordinary net lease operates to relieve a fiduciary owning the covered property of the duty of management for which subdivision 7 of section 285-a was intended to provide compensation additional to regular commissions. This court does not read those decisions, however, as requiring a like holding in every case involving a net lease especially those in which the fiduciary in his capacity as a landlord is held to the performance of duties which make him a good deal more than a mail chute for the passage of monthly rent checks from the tenant to the beneficiaries. Judge Froessel, in his opinion in the Smothers case, was most explicit in maintaining the distinction which separates the two types in his analysis of the court’s earlier holding in Matter of Brennan (251 N. Y. 39) in which additional commissions had been allowed. He said (p.496):
“ However, there are substantial differences in the remaining essential clauses of the two leases which establish that the Brennan trustee had many duties which it had necessarily to fulfill, as, e.g., the Brennan lease was negotiated by the trustee, a very active duty in itself, whereas the subject lease was negotiated by the testator * *
“ Thus under the Brennan lease, the trustee had continuing rights and duties of management which do not appear in the *78 present lease. Indeed, if there were ever a lease where the landlord had virtually nothing to do but collect rent, this is such a ease. As we said in the Brennan case (supra) it is the ‘ exercise ’ of responsibility for directing, supervising, overseeing, administering and controlling the property ’ that ‘ constitutes management within the intent of the statute ’ (p. 44) ”.
The nature and extent of the services which the trustees were required to perform in connection with the Tulsa property are set forth at length in two affidavits which the special guardian has stipulated the court may employ as the record for decision. The lease was originally negotiated in 1940 by the testator’s predecessor in interest and was subsequently assigned to Mr. Kahn and Mrs. Frances K. Teplitz as partners and tenants in common.- It is true that the owners are dispensed from routine duties incidental to day by day management of the premises for which the tenant is required to make repairs, maintain insurance and pay taxes but the fact that the property continues to be held in joint ownership imposes additional burdens upon the trustees that appear to be as onerous as those from which they are relieved. They were required to qualify and maintain ancillary administration of the estate in Oklahoma, to prepare partnership reports and accountings, to make payments of mortgage principal and interest, and, finally, to file Federal, Oklahoma, and New York partnership income tax returns. It is not so much in these details, however, that the accountants demonstrate the differences which distinguish this operation from that under review in Matter of Smathers (supra) as it is in two major and fundamental aspects of management which they were required to assume.
The first of these involved the discharge and replacement of the original mortgage in the amount of $54,370.92 which became due on October 1, 1955. Negotiations for an extension were instituted by the trustee with the holder, the Equitable Life Assurance Society, but proved fruitless. As a result the petitioners were required to obtain new financing which they succeeded in procuring from another lender, the Northwestern Mutual Life Insurance Company on more favorable terms coupled with an amended insurance trust agreement. In principle there is very little to distinguish obtaining a mortgage for a property from obtaining a tenant for it, at least in the sense that each involves the discharge of a major duty of management but the second type of transaction constituted a fundamental basis for the award of management commissions in Matter of Brennan (supra) as Judge Froessel pointed out in *79 the Smothers case. No reason for departure from the reasoning of that case is indicated here.
Additional support for the contention that the trustees have shown themselves to be entitled to management commissions is found in a recent development in their administration of the Tulsa property. The tenant in possession has served notice of its intention to vacate the premises on June 30, 1958, two and a half years prior to the expiration of the lease. Though fully confident of the lessee’s ability and willingness to discharge its obligation for payment of the rent due for the balance of the term, on receipt of the notice the trustees immediately instituted efforts to obtain a new tenant because of their belief that the property would decline in value if allowed to remain unoccupied for two and a half years even though suffering no physical deterioration. It is for reasons such as these that the court is satisfied that the petitioners have demonstrated their performance of the duties of management within the meaning of the statute and the objections of the special guardian are accordingly overruled.
Counsel fees have been fixed in the amount requested.
Submit decree on notice settling the account.