W. Vincent Grady, S.
Charles C. Marshall, the decedent herein, died a resident of Millbrook, Dutchess County, New York on June 9,1938, leaving a last will and testament dated February 13,1937, which was admitted to probate in this court on July 11, 1938.
Under the terms of the will, the United States Trust Company of New York was made sole executor and trustee, and letters testamentary and letters of trusteeship were issued to said trust company on July 11, 1938.
The trust company’s accounts as executor were settled by decree of this court on February 26, 1942.
This proceeding was brought to settle its intermediate account as trustee for the period from July 11, 1938 to April 16, 1954.
Objections were filed covering: 1) the sale of 617-627 West 181st Street, New York, New York, 2) the payment of management commissions to the trustee covering this property, 3) the allocation of certain expenses as between principal and income, and 4) the payment of a $7,000 legal fee to Harison and Hewitt, attorneys for trustee.
After hearing the evidence presented by the respective parties, and after hearing William S. Gaud, Esq., of counsel for the *156 trustee, and Charles A. Butts, Esq., of counsel for the objectants, and after reading- the record and the memoranda submitted by the respective parties, and after due deliberation thereon the court decides and finds as follows:
Objections to sale of property located at 617-627 West 181 Street, New York, New York. It appears that the trustee sold this department store property over the specific objections of the income beneficiaries and remaindermen and despite an offer of indemnification. To justify its action the trustee claims that it sold the property for $765,000 which was an increase of $138,260.23 over estate tax appraisal figures of 1938. However, the objectants claim that the trustee was arbitrary in its decision to sell and disregarded the opinions of the objectants and proceeded with the sale with a resultant loss to the income bcneficaries of over $30,000 per year. It is contended by the trustee that the entire neighborhood of the property in question experienced a change in nationality, and the trustee anticipated and the various real estate experts consulted by it agreed that this would result in the lowering of real estate values. However, it appears that this change caused a lowering of the standard and quality of merchandise sold, but also resulted in an increase in the volume of sales, in the department store, which was the subject of the lease. The evidence disclosed also that at about the same time another bank and an insurance company thought enough of the neighborhood to purchase property for investment purposes and old stores were remodeled and new stores located in the vicinity of the subject property. All banks in the neighborhood also showed an increase in business.
In view of these findings, there is no question but that the trustee and its real estate advisers came to the wrong conclusion of probable descending- real estate values. However, the question is whether the trustee employed such diligence and such prudence as in general, prudent men of discretion and intelligence would employ in their own like affairs. (King v. Talbot, 40 N. Y. 76.)
Although the trustee was arbitrary in its handling- of the objectants and did come to the wrong conclusion, in the opinion of the court, this was not sufficient to render it liable under the rule of the King case.
In addition there was a definite authorization given to the trustee in the will to sell in its discretion. Article numbered i c Thirteenth ’ ’ authorized the trustee — “ at any time and from time to time, in its full and absolute discretion to sell any and all of real property forming part of my estate or of said trust, at either public or private sale, for such price or prices, and *157 on and under such terms as to credit and otherwise as it shall see fit Therefore, in view of this authority given to the trustee by the will, and it appearing that the trustee did not abuse its discretion, objectants request for a surcharge of trustee, should be denied.

Objections to payment of Management commissions.

Subdivision 7 of section 285-a of the Surrogate’s Court Act states in part: 1 ‘ Where a trustee is for any reason or cause whatsoever entitled or required to collect the rents of and manage real property * * * in addition to the commissions hereinbefore provided he shall be allowed and may retain for such services six percentum of the gross rents collected ”.
The objectants claim the trustee is not entitled to management commissions of approximately $43,803.52 on the 181 St. property under this statute and rely upon Matter of Smathers (309 N. Y. 487 [1956]) and Matter of Burrows (3 N Y 2d 869 [1957]). The court in the Smathers case rejected the trustee’s claim for commissions on the ground that the trustee did nothing beyond receiving the rent. It appears that a trustee’s right to management commissions depends upon the facts of each case. In the Burrows case (p. 871), the Court of Appeals disallowed the claimed management commissions upon rents collected under a net long-term lease, citing the Smathers case and stating that the record did not indicate that the lease in question ‘ ‘ required such services as are contemplated by the management of real property within the meaning of this section ’ ’.
In the instant case, which is a net lease rental, the actual management of the property was the responsibility of the tenant. The tenant was virtually the owner subject to contingent rights of the landlord which never became operative. Taxes, water rents, assessments, inspection reports, violations, repairs and insurance were all handled by the tenant. Under this set of facts, it is the opinion of the court that the trustee is not entitled to additional commissions for management of the real estate of 617-627 W. 181 St., New York, N. Y.

Objections to the allocations of certain expenses as between principal and income.

Objections were made to payments made out of income for amortization of the mortgage on the 181 St. property. Although these payments Were made under an agreement between the trustee and the income beneficiaries there was no consideration at that time of the possibility of the 181 St. property being sold before the termination of the trust. Since this property was sold by the trustee before such termination, it is the opinion of the court that the amortization payments should be charged *158 to principal and the income beneficiaries are equitably entitled to be reimbursed to the extent of the payments so made of approximately $47,000.
Objections were also made to the expenses of $3,409.80 covering the refinancing of the 181 St. mortgage in 1949. In the opinion of the court $1,946.44 should be charged to principal and the income beneficiaries should be reimbursed that amount.
Objections were made to the payment of $10,997.32 covering the expenses of a declaratory judgment proceeding under the renewal of the lease on the 181 St. property, and arbitration proceedings to fix the rent on said property and the cost of the renewal of the lease itself on said property. Of this amount $9,242.35 should be charged to principal and the income beneficiaries should be reimbursed that amount.
Objections to the payment of a $7,000 legal fee to Harison and Hewit, attorneys for trustee are held for supplemental decree after a final determination is had.
Settle decree on notice.