John D. Bennett, 8.
This is a contested accounting proceeding in which the widow and sole beneficiary is the object-ant and the executor is the petitioner-accountant. The formal objections to the account are 14 in number and the issues will be discussed below after a brief consideration of the general background facts.
The decedent died on March 22, 1966 and left him surviving a widow and a son who was then 14 years of age, and is now attending college. For 10 years before his death the decedent had been retired, except that he had retained some parts, machinery and equipment of an auto electric business so as to dispose of them. This appears from the United 'States estate tax return on file and the testimony is that he devoted most of his attention to his real estate investments.
The will left the residuary estate to the widow. The son was separately provided for by 14 Totten Trust bank accounts and insurance aggregating about $49,000. There was about $39,000 cash and insurance payable to the estate, plus securities and mortgages of about $68,000. The main assets at death were 14 parcels of real estate, mostly occupied by tenants, three of them under fairly long-term leases which had been entered into by the decedent. Debts amounted to about $18,000.
The big problem facing the executor at the beginning of administration was the lack of cash and liquidity of assets to meet estate obligations, particularly the large amount of estate *1023 taxes, eventually fixed at over $119,000. The New York gross taxable estate was about $911,000. In addition to estate taxes, there were, of course, funeral and administration expenses, as well as insurance premiums and land taxes. Some of the land taxes were to be paid by tenants where the leases so provided. The account shows, and the proof on trial confirmed, that the executor collected rents on the real property from the date of death until the last day of the accounting. He used such rents to pay administration expenses, charges on the real property, and estate obligations. He also made some distribution® to the widow and paid some of her and the son’s personal expenses.
1. The widow’s 1st and 14th objections are to the effect that the real property as a matter of law vested in her on the decedent’s death, and that the executor unnecessarily, unreasonably and improperly retained custody and control of such real property. The corollary of this proposition is that the widow thereby claims to have been entitled to collect the income herself.
None of the real property was specifically devised under the will. Title thereto, nevertheless, vested in the widow at the date of death (Matter of Salomon, 252 N. Y. 381, Barber v. Terry, 224 N. Y. 334). Her rights therein were vested only because of the general residuary benefits conferred on her, and, in any event, those rights were subject to and chargeable with the payment by the executor of administration and reasonable funeral expenses, debts of the decedent, and any taxes for which the estate was liable. The prior case law has been codified in EPTL 13-1.3 and predecessor statutes. That statute specifically charges not only “ all ” the “ property” of the decedent, but also “ any income therefrom in the course of estate administration ’ ’ with the payment of such expenses, debts and taxes. To the extent that the objections attack the propriety of the executor’s custody and control or hi® collection of the rents they cannot therefore be sustained.
[Portion of opinion here omitted, by direction of Surrogate.]
If Mr. Tomlin [the executor] had disregarded the wishes of the widow and effected sales of the real property against her wishes, she might conceivably have held him personally liable and charged him with violation of his duties to her. This is suggested by Professor Hoffman in his Practice Commentary to EPTL 13-1.3 (McKinney’s Cons. Laws of N. Y. Book 17B, p. 383), where he states: c£ Although the personal representative may be empowered, under this section, to resort to realty passing to the residuary beneficiary under the will even though personalty is available, it is likely that the fiduciary may be *1024 required to justify Ms decision to dispose of the realty in such case, on an application to the Surrogate by the beneficiary of the residuary estate who would prefer to receive such realty in hind — particularly in light of the general power of the fiduciary to distribute in Mnd under subparagraph (b) (21) of 11-1.1.”
For a further indication of the significance and forceful effect that has been given to the wishes of a beneficiary, see Twyeffort’s New York Estates and Surrogates, (2d ed.) (vol. 1, § 393) "citing McDonald v. O’Hara (144 N. Y. 566) and Prentice v. Janssen (79 N. Y. 478). See, also, Trask v. Sturges (170 N. Y. 482, 497) and Mellen v. Mellen (139 N. Y. 210). If the same reasoning in the above line of cases was to be applied to the situation here, the court would be compelled to find that the widow had expressed an unequivocal election to receive the property in kind and that the executor’s power of sale was thereby extinguished.
In this case that question is academic and not necessary to be adjudicated, for the court finds: 1) that the weight of the evidence is that the widow imposed her own judgment and personal wishes upon the executor who was attempting to fulfill his fiduciary obligations and at the same time satisfy her whims; 2) that the evidence shows the estate suffered no loss or damage by reason of the executor’s retention of custody and control of the real property; 3) that the widow actually benefited financially in the long run because the real property and the securities gained considerably in value.
For the reasons above stated, objections 1 and 14 are dismissed on the merits.
2. Objection No. 2 was withdrawn.
3. As amended, the tMrd objection is sustained. The executor paid Mmself $2,500 on account of ordinary executorial commissions (distinguished from management commissions treated below) without prior court approval. There is no authorization in the will, and no express agreement of the beneficiary to the contrary, so the executor could be surcharged, with interest on $2,500 at 6% from the dates of receipt to the date of this decision (Matter of Crippen, 32 Misc 2d 1019). Nevertheless, the court will exercise its discretion not to assess interest because Mr. Tomlin generously probated the will without any charge for Ms own legal services.
[Portion of opinion here omitted, by direction of Surrogate.]
5. The fifth objection concerns payments made on account of management commissions on the rent proceeds collected. Such *1025 commissions were paid, according to the amended objection, in six installments aggregating $4,447.50. The total amount stated on the trial was $6,947.50. It should be noted that, although the widow expressed her opposition to selling most of the real property and acquiesced in the executor’s retaining control of the real property to pay taxes and expenses, the executor did not apparently inform the widow of his intention to retain or to charge extra management commissions. The conduct and acquiescence of the widow justifies the allowance by the court of commissions generally; however, there is nothing in this record which would indicate that the widow had consented or acquiesced with knowledge or even awareness that the executor would be claiming or retaining for himself any “ management ” commissions. The executor presumably retained management commissions on the authority of SCPA 2307 (formerly Surrogate’s Ct. Act, § 285). Subdivision 6 of that statute authorizes a fiduciary to retain 5% of the gross rents collected from real property only where he renders management services. The statute expressly mentions “ services ” and “manage.” The reference therein to “ such services ” clearly means not only rent collections but also active management.
Management commissions are granted by the statute to the fiduciary as a matter of right and the widow cannot complain, where they were earned, since they are expressly allowed as extra compensation in addition to the other, ordinary commissions under SCPA 2307. Ordinary commissions are calculated on principal as well as on income, and this includes rental income. The court holds that the executor in this case is entitled under SCPA 2307 to the ordinary commissions calculated upon all sums received (including rents) and upon all sums paid out by him. The court also holds that his rentention of some of the additional management commissions was improper and should be disallowed (Matter of Smathers, 309 N. Y. 487; Matter of Burrows, 3 N Y 2d 869; cf. Matter of Kahn, 13 Misc 2d 76).
Matter of Smathers (supra), dealt with trustees’ commissions on rent receipts under the language of section 285-a of the Surrogate’s Court Act, and was decided in January, 1956. Here we are concerned with a different statute concerning executorial commissions, but the basic principles are the same. Judge Feoessel pointed out in Matter of Smathers (supra) that the Legislature had amended section 285-a in 1943 and 1948 by adding the phrases “ for such services ” and “ according to the services rendered by them.” Section 285, dealing with executors, was amended to take effect in 1956 shortly after *1026 the decision in Matter of Smathers (supra) so as to add the same phrases to that section. Those phrases were retained and carried over into SOPA 2307. As stated by the Court of Appeals in Matter of Smathers (supra, p. 495): “ We think these additions are most significant. It is well settled that in the interpretation of a statute we must assume that the Legislature did not deliberately place a phrase in the statute which was intended to serve no purpose * * * and each word must be read and given a distinct and consistent meaning * * *. The only reasonable conclusion that can be reached is that the Legislature clearly intended- — and so indicated — that the extra compensation for management can be retained only * for such services ’, i.e., for the active performance of the duties and obligations connected with the real property, and not for just 6 general responsibility ’ ”.
Matter of Smathers (supra) has been applied under various fact patterns. Matter of Burrows (supra) involved a net lease and did not require “ such services as are contemplated by the management of real property within the meaning of this section ” (p. 871).
Matter of Marshall (11 N Y 2d 955, 956) denied the extra commissions since “ the actual management of the property was the responsibility of the tenant thereof ”. Matter of Marshall (supra) is of considerable interest as applied to the factual pattern here inasmuch as it concerned a net lease and the Surrogate had first denied management commissions (21 Misc 2d 154, 157), holding that as a “ net lease rental” the actual management of the property was the responsibility of the tenant. The Appellate Division reversed (14 A D 2d 569), and at page 570 held that the fiduciary had “ performed extensive services which must be held to be ‘ management ’ services.” The Appellate Division enumerated the services as negotiations and modification of the lease, proceedings required upon expiration of the first term, refinancing and extending a mortgage, insuring that taxes were paid, obtaining insurance, making repairs, and complying with municipal orders as to violations. The Appellate Division expressly found that the fiduciary u was not, as in the Smathers case (supra), a mere passive recipient of rent checks ”. Nevertheless, the Court of Appeals, without opinion, reversed the Appellate Division and reinstated the decree of the Surrogate’s Court expressly upon the authority of Matter of Burrows (supra) and Matter of Smathers (supra).
*1027 In the case now before the court the phraseology of the objections concedes, in effect, that some “management” services were rendered by the executor. The objeetant, however, offered in evidence three written leases covering three of the parcels. These called for substantial rentals. One lease, made in 1954 by the decedent with Esso Standard Oil (rent paid by Humble Oil and Refining Co.) was for a term of at least 20 years and required the lessee to pay all charges for water, taxes, etc. Another lease, with Gulf Oil Co., was made by the decedent in 1959 for a term of at least 15 years and required the lessee to pay similar charges with the exception that the lessor was to pay the taxes and be reimbursed by the lessee. The third lease, with Empire Diner, Inc. (rent paid by Karakarlis Restaurant Corp.), was made in 1960 by the decedent for a term of at least 25 years and required the lessee to pay all charges for water, taxes, assessments, etc. These three leases are “ net leases ”, as the term is generally understood, although some provisions designed for the protection of the lessor vary, e.g., covering insurance, mortgage financing, entry for the purpose of making necessary repairs, etc.
Relating the facts adduced in this case to those dealt with in the reported cases, and applying the legal principles mentioned, this court finds that the executor did not prove that he managed those three parcels of real property. The court will allow him the regular commissions for receipt of the rents on those parcels and payment out of those sums, but finds that any allowance for 1 ‘ management ’ ’ commissions on them would not be justified. Since the account does indicate that he retained such additional commissions, he will be .surcharged the amounts retained, with interest computed at 6% per annum from the date of each retention to the date of this decision. The court fixes the latter date as the proper one under the circumstances since, by this decision, it is also approving the payment of the other commissions.
[Portion of opinion here omitted, by direction of Surrogate.]
Besides the denial of a portion of the management commissions (No. 5 above), another special ruling must be made as to the commissions claimed in the account upon certain receipts and payments for real estate taxes. The amended account shows that the executor arranged with the lessees under the net leases to pay the taxes directly to him, even where the lessee was supposed to pay the taxes directly. He did this allegedly (but with no. proof) because the decedent during his lifetime *1028 had followed that practice. The Gulf Oil lease did expressly provide (as noted above) that the lessor would pay the taxes and then be reimbursed by the lessee. The executor now claims receiving and paying out commissions on the full amount of the taxes, which aggregated $57,311.94, and he lists such payments as income to the estate (Schedule A-2, p. 10, as amd. by affidavit of Feb. 1,1971).
It is the decision of this court that no commissions whatever should be allowed upon these tax payments, since they were not income to the estate, but merely an exchange of funds, either to satisfy the terms of the leases or to facilitate the task of the executor and to make certain that the tenants paid the taxes. The reasoning applied by Judge Silverman to estate tax collections in Matter of Troy (N. Y. L. J., Dec. 24, 1970, p. 11, col. 5) is equally appropriate here. “ The legal situation amounts merely to an advance out of the general estate to pay the tax * * * and the reimbursement of that advance ”. To hold otherwise would contravene the spirit and intent of the statute (SOPA 2307).
The refund of any estate taxes is in the same category and cannot be considered income. (See, for example, the sum of $4,195.41 received on Jan. 16,1970, which is not a commissionable item.)
[Portion of opinion here omitted, by direction of Surrogate.]
The executor and his counsel urge that the court fix the compensation for legal services according to the local Bar Association’s minimum fee schedule. As was done in Matter of Levy (19 A D 2d 413, 416), this court will exercise its own discriminating judgment and take into consideration the minimum fee schedule, but it is certainly not controlling.
One of the arguments against allowing attorneys’ fees in the accounting proceeding is that such proceedings could have been obviated by obtaining a receipt and release from the widow as sole beneficiary. This argument is not sustained by the court, because of the nature of the widow’s accusations and the entire history of this estate. The nature of the objections filed also indicate that an accounting proceeding* was necessary. However, part of the contest here was necessary because of the improper retention by the executor of certain commissions. The executor personally, at least to that extent, must pay his own attorney. As the court said in Matter of Chiesa (23 A D 2d 562): “ Although the erroneous computation of commissions by the executors was the result of an honest mistake, the beneficiaries of the estate should not be penalized by the payment *1029 of legal services for defending the executors with respect to such mistake. ’ ’ The same rule applies to services rendered in establishing the personal claim of the attorney against the estate for fees (Matter of Locke, 21 A D 2d 958; Matter of Norton, 139 Misc. 487).
The services, as outlined by the attorney, include a great many which were purely executorial and minsterial in character, without significant legal questions involved. Those cannot be considered as legal services and have been disregarded by the court in fixing the fee (Matter of Hallock, 214 App. Div. 323; Matter of Gerard, 160 N. Y. S. 2d 206 [Bennett, S.]).
[Portion of opinion here omitted, by direction of Surrogate.]