OPINION OF THE COURT
Robert G. Hurlbutt, J.
In a proceeding under CPLR article 78, petitioners seek review of respondents’ determination that under the regulations of the Department of Social Services, their children were ineligible for Aid to Dependent Children (ADC) benefits for a period of three months after a child in the family unit became categorically ineligible.
The facts are undisputed. Petitioner Babcock resides with her daughter Nicole, her boyfriend Scott Teller, and a child Zachary who is the common child of petitioner and Teller. Babcock received assistance for a household of four people. In August 1994 Teller, who was previously unemployed, obtained employment. Petitioner sent a copy of Teller’s first pay stub to the Oswego County Department of Social Services (OCDSS) and requested that assistance be continued for herself and her daughter, Nicole. OCDSS determined that Teller’s income disqualified him and both children for assistance due to the application of the regulation (18 NYCRR 369.3 [d] [1]) authorizing the Department to continue the common child’s ADC deprivation factor for a period of three months after he became ineligible for ADC due to his father’s return to employment. OCDSS continued assistance for Babcock alone under the Home Relief program, having determined that Nicole was ineligible for ADC.
The facts of petitioner Bos’ case are similar. She resided with her son Mathew, her boyfriend David Thieringer, and a child David Thieringer, Jr., who is the common child of Bos and Thieringer. She, too, received assistance for a household of four until Thieringer obtained employment in March 1995. Bos provided a copy of Thieringer’s first paycheck to OCDSS and requested continuation of assistance for herself and Mathew. OCDSS determined that Thieringer’s income disqualified him and both children for assistance based upon the same regulation.
Each petitioner sought review of the determination of the Oswego County Department of Social Services, and each case was the subject of a fair hearing before an Administrative Law *164 Judge pursuant to section 22 of the Social Services Law.[1] In each case, respondent New York State Department of Social Services (NYSDSS) upheld the determination of the local agency. Petitioners allege that the respondents’ actions are arbitrary and capricious. Respondents maintain that the determination that the children Nicole and Mathew were ineligible for ADC, made by the Oswego County Department of Social Services and upheld by the New York State Department of Social Services after hearing, was correct under the statutes and regulations. Respondents seek dismissal of the petition.
Aid to Dependent Children, or Aid to Families with Dependent Children (AFDC) as the Federal program is titled, is a cooperatively funded Federal-State public assistance program under which New York is partially reimbursed for benefits paid for needy dependent children. (42 USC § 601 et seq.; Social Services Law § 343 et seq.) The State plan for aid to needy families with children must be approved as in conformity with the Federal statutes and regulations (42 USC § 601), and is required to comply with the mandates set forth at 42 USC § 602. The purpose of the program is to provide financial assistance to encourage the care of needy dependent children and to help maintain and strengthen family life. (42 USC § 601.) The term "dependent child” means "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home * * * or physical or mental incapacity of a parent * * * and (2) who is (A) under the age of 18, or (B) at the option of the State, under the age of nineteen and a full-time student”. (42 USC § 606 [a].) Section 607 (a) adds to the definition of "dependent child” in section 606 (a) "a needy child * * * who has been deprived of parental support or care by reason of the unemployment * * * of the parent who is the principal earner”.
The Social Services Law governs the program for Aid to Dependent Children in New York State, and section 349 (B) of the statute mirrors the above-quoted language of 42 USC § 606 (a) and § 607 (a). Pursuant to Federal regulations "needy child deprived by reason of’, as used in 42 USC § 606, requires that both need and deprivation of parental support or care exist in the individual case. (45 CFR 233.90 [c] [i].)
When the adult male members of petitioners’ households were unemployed, the children were eligible for ADC because *165 they each had a deprivation factor and they were needy under New York State’s need standard. The children Nicole and Mathew met the requirement of deprivation because of the continued absence of a parent (their respective fathers) from the home. The children Zachary and David lived in a household with both of their parents, but they were deprived of parental support because of the unemployment of their respective fathers. When the adult male members of these households became employed, their children, Zachary and David, lost their eligibility for ADC because they no longer had the necessary deprivation factor and because they no longer met the need standard.
Under Federal regulations, Federal financial participation "is available in assistance payments which are continued in accordance with the State plan, for a temporary period during which the effects of an eligibility condition are being overcome, e g * * * unemployment of a principal earner in AFDC.” (45 CFR 233.10 [b] [4].) In New York,
"[t]he ADC grant may be continued for three calendar months after the month in which the child or minor becomes ineligible when:
"(i) the effects of a condition of eligibility are being overcome;
"(ii) need continues; and
"(iii) ineligibility of the child or minor for ADC results from one of the following changes in circumstances * * *
"(c) parent returns to full employment.” (18 NYCRR 369.3 [d] [1].) The regulation further provides that "the grant may not be continued after the child or minor becomes ineligible, if: need does not continue.” (18 NYCRR 369.3 [d] [3].)
The objective of the statutory three-month extension of benefits is to aid the family during the transitional period, to minimize the need to move the family on and off public assistance or from one relief program to another, and to minimize the economic disruption associated therewith.[2] New York State receives Federal financial participation in the ADC extension period which would not be available under the Home Relief program.
*166 Respondents take the position that 18 NYCRR 369.3 (d) (1) mandates the continuation of the grant for three months in every case, and that there is no discretion to decline to continue the grant even where, as here, the result is to deprive an otherwise eligible child of benefits. OCDSS, in applying 18 NYCRR 369.3 (d) (1) to petitioners’ cases, determined that the continuation of the ADC grant requires continuation of the common child’s deprivation factor, which was his father’s unemployment. Since the common child is thus deemed to have a deprivation factor, he must be considered as part of the filing unit (18 NYCRR 352.30 [a]),[3] and his father’s newly acquired income must be considered available to the entire unit. In these cases, the noncommon children, Nicole and Mathew, were found to be ineligible for ADC (at least so long as their half-siblings had a statutorily extended deprivation factor). Their ineligibility was due to the income earned by Zachary’s and David’s fathers.
Petitioners maintain that Nicole and Mathew were entitled to have their eligibility for ADC considered without regard to their half-siblings’ resources, because the half-siblings, David and Zachary, no longer had a deprivation factor or need. The argument is that respondent should not apply the three-month extension provided for at 18 NYCRR 369.3 (d) (1) where the consequence of extending a deprivation factor previously existing but now gone is to deprive a sibling of ADC to which she is entitled. Petitioners argue that respondents have improperly applied 18 NYCRR 369.3 (d) (1) in these cases, both because the regulation is permissive and has arbitrarily been treated as mandatory, and because the regulation expressly states that the "grant” shall not continue if need does not continue. At both hearings it was undisputed that the common children no longer met the need standards once their fathers became employed. Thus, petitioners contend that by the clear language of the regulation itself, the grant should not continue (and the deprivation factor should not be extended) where the need did not continue.
*167 The determination of the State Department of Social Services after hearing in each case was that the Department’s decision not to extend ADC benefits to the noncommon child in each of petitioners’ households was correct, and consistent with current Department policy. Department policy was based upon 18 NYCRR 369.3 (d), as qualified in the Public Assistance Source Book. Apparently the Source Book provides that the local agency must continue eligibility for three months after the month in which a child becomes ineligible for assistance when need continues. Neither party to this proceeding provided the Public Assistance Source Book, nor did they address its genesis or the authority under which it is promulgated. In both decisions under review, the New York State Department of Social Services held that "the regulations at 369.3 (d), as reflected in the Department Source Book, are not discretionary but must be applied in a uniform and judicious manner.” (Decision After Fair Hearing in Matter of Lisa Babcock, exhibit D to petition.) This holding suggests that the Source Book modifies 18 NYCRR 369.3 (d) to require that the grant be extended for three months in every case, removing all discretion from the agency.
Respondents do not address the discrepancy between the permissive language of the regulation (18 NYCRR 369.3 [d] provides the ADC grant may be continued) and the mandatory nature of the alleged "departmental policy”. Respondents’ memorandum of law is addressed primarily to defense of the filing unit rules of the Deficit Reduction Act of 1984, which are not under challenge here.
The respondents are obligated to follow the duly adopted rules and regulations of the Department of Social Services, which have the force and effect of law. In the instant proceeding, the determinations against the petitioners are predicated upon the agency’s interpretation of 18 NYCRR 369.3 (d) (1) as requiring the continuation of the ADC grant in every case, regardless of whether the result of continuation is in harmony with the objective of the regulation. The objective of the regulation is to provide continuing assistance during the transition from eligible to ineligible status and to achieve maximum Federal financial participation in doing so. The agency’s interpretation of the regulation in the instant cases results in a termination of benefits to a needy, deprived child who would otherwise (but for the three-month continuation) be eligible for ADC.
The regulation at issue, 18 NYCRR 369.3 (d), is couched in permissive, not mandatory language. That is to say the regula *168 tion provides that the ADC grant "may” be continued, not that it "must” be continued. Generally speaking, permissive or discretionary words in a statute are to be given a permissive interpretation, and mandatory effect is given to them only when required by the context of the statute, the facts surrounding its enactment, or the purposes sought to be served thereby. (McKinney’s Cons Laws of NY, Book 1, Statutes § 177 [b]; Matter of Scoglio v County of Suffolk, 85 NY2d 709; Matter of Evans v Gardner, 71 Misc 2d 283.) Respondents do not argue nor can the court conclude that the context of the regulation, the facts surrounding enactment or the purposes sought to be served by the regulation dictate mandatory application despite the permissive language. "That being so the word 'may’ should be given its usual meaning and treated as permissive.” (Matter of Evans v Gardner, supra, 71 Misc 2d, at 284.)
Under the general rule, construction given statutes and regulations by the agency should be accepted if not irrational or unreasonable. (Matter of Lumpkin v Department of Social Servs., 45 NY2d 351, 356; Matter of Mabb v Toia, 64 AD2d 831, 832, affd 48 NY2d 928.) Respondents rely upon this rule in arguing that the agency’s application of the regulation should be given deference. It is the holding of this court that the Commissioner’s conversion of the extension of the ADC grant provided for in 18 NYCRR 369.3 (d) from a permissive extension to a mandatory extension is irrational as unsupported by the context of the regulation or the purposes sought to be served thereby.[4] This is not the substitution of my judgment for that of the Legislature — for where "the legislative intent is clear no attempt at construction should or will be made.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76.) The legislative intent, which is to be ascertained from the natural and obvious meaning of the words used (McKinney’s Cons Laws of NY, Book 1, Statutes § 94), is found in the clear meaning of the permissive word "may”. Where the agency’s interpretation "manifestly 'runs counter to the clear wording of a statutory provision’ * * * as well as the underlying legislative intent” (Matter of Bosh v Fahey, 53 NY2d 896, 900), it cannot be upheld. The administrative determinations in petitioners’ cases were made and upheld under a peremptory construction of the applicable regulation which this court finds to be contrary to the plain language and, thus, irrational and unreasonable. The petition must be granted.
*169 It is implied in the administrative record in these cases that, absent the three-month extension allowed by 18 NYCRR 369.3 (d) (1), the petitioners’ children, Nicole and Mathew, would be eligible for a grant of ADC on a case with their respective mothers. The filing unit rules would not require that David and Zachary be included, because they are no longer deprived or needy under 42 USC § 602 (a) (38) and § 606 (a) (1) and (2). (See, Matter of Farrell v Perales, 150 Misc 2d 419.) Respondents are required to exercise discretion in applying the subject regulation to these cases, and in doing so they should be guided by the purposes sought to be served by the regulation.
The respondent’s decisions dated May 16, 1995 and July 3, 1995, insofar as they affirm OCDSS’ determination to deny assistance to the petitioners’ children, Nicole and Mathew, are annulled.

. Babcock’s hearing date was October 18, 1994 which resulted in a decision dated May 16, 1995, and Bos’ hearing date was June 2, 1995 resulting in a decision dated July 3, 1995.

. Memorandum of law of respondent New York State Department of Social Services; see also, Appendix to Assistant Attorney-General’s memorandum of law in Gallup v Wing (Sup Ct, Onondaga County, index No. 95-5191), advisory opinion of Ann Screiber, Dept of Health & Human Servs, Feb. 1, 1996.

. 18 NYCRR 352.30 (a) provides: "When a minor dependent child is named as an applicant for public assistance, his or her natural or adoptive parents and blood related or adoptive brothers and sisters (who are also minor dependent children) must also apply * * * and have their incomes and resources applied toward the public assistance household * * * [A] minor dependent child is a child who is under 18 years of age and, with respect to aid to dependent children, is or would be eligible for assistance without regard to income or resources.”

. In so holding, I respectfully disagree with the conclusion of the court in Morrison v Wing (Sup Ct, Cattaraugus County, Dec. 14, 1995).