OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, without costs, and the petition dismissed.
The Appellate Division concluded that, in computing a family’s entitlement to public assistance benefits, the Department of Social Services must disregard any OASDI (Old-Age, Survivors’ and Disability Insurance) benefits received by a family member between the ages of 18 and 22 who is currently attending school on a full-time basis. This conclusion was based, in part, upon an “Action Transmittal —Interpretation” issued by the Department of Health and Welfare which directed State agencies to disregard such income in accordance with the decision in Elam v Hanson (384 F Supp 549).[1] Inasmuch as the applicable Federal statutes plainly mandate a contrary conclusion, we hold that the decision of the Appellate Division must be reversed.
*899 As a general rule, Federal law requires State agencies to take into consideration any income or resource of eligible family members in determining the family’s need (US Code, tit 42, § 602, subd [a], par [7]; see Social Services Law, § 131-a, subd 1). Under existing Federal regulations, most Social Security payments are to be treated as income for this purpose (45 CFR 233.20[a] [4] [i]). Thus, although prior to 1965 individuals over the age of 18 were not eligible to receive Social Security benefits, State social service agencies have always been directed to deduct the Social Security benefits received by their younger counterparts in determining the family’s public assistance need.
In 1965, Congress enacted the statute at issue in this case, which extended Social Security benefits to dependents between the ages of 18 and 22 who attend school on a full-time basis. (Public Law 89-97, § 306, 79 US Stat 370, codified at US Code, tit 42, § 402, subd [d], par [1], cl [B], subdcl [i]). Contrary to the assumption made in the court below, there is absolutely no evidence that Congress intended to require State social service agencies to treat the payments authorized under the new statute any differently than they had been treating the Social Security benefits received by family members under the age of 18. Indeed, the evidence points in the opposite direction. Had Congress not assumed that the newly authorized payments would be regarded as income for public assistance purposes, it would not have found it necessary to add section 406 of the act, which enables State agencies to disregard the lump-sum, retroactive payments that were to be received by the designated eligibles as a result of the legislation, “[n]otwithstanding the provisions of” section 602 (subd [a], par [7] [emphasis supplied]; see Report of the Senate Finance Committee in Relation to Public Law 89-97, No. 404, reprinted in 1965 US Code, Cong and Admin News 1943, 2089, 2212).[2] Obviously, if Congress had intended to mandate that all of the benefits paid under the act be disre *900 garded, there would have been no need for it to specify that the retroactive portion of the payments may be disregarded at the election of the States.
We are aware that the Department of Health and Welfare, the Federal agency charged with administering the Social Security Act, has embraced a contrary interpretation of the applicable statutes and has directed the State social service agencies to comply with its views. We are also aware that the public assistance portion of the Social Security Act represents a “ ‘scheme of cooperative federalism’ ” (Matter of Jones v Berman, 37 NY2d 42, 52, quoting King v Smith, 392 US 309, 316), which ordinarily requires States electing to participate in the program to comply with the relevant Federal regulations (Hagans v Lavine, 415 US 528, 530, n 1; Matter of Dunbar v Toia, 45 NY2d 764, 766; Matter of Beaudoin v Toia [Jorczak], 45 NY2d 343, 348; see Social Services Law, § 358, subd 1). We cannot, however, agree with petitioner’s contentions that the “scheme of cooperative federalism” implicit in the public assistance system requires States to adhere blindly to all Federal directives, no matter how irrational or inconsistent with applicable Federal law. In instances such as this, where the Federal agency’s interpretation manifestly “runs counter to the clear wording of a statutory provision” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459), as well as the underlying legislative intent, we think that the State agency is entitled to rely upon the Congressional mandate despite the existence of a contradictory directive issued by the Department of Health, Education and Welfare. We find it significant in this connection that the Federal agency is itself limited to promulgating rules and regulations which are “not inconsistent with” the provisions of the Social Security Act (US Code, tit 42, § 1302).[3]
*901 We recognize that our holding today may engender certain practical difficulties due to the disparity between the interpretation adopted by the State commissioner and approved by this court and the interpretation of Federal law which the Department of Health and Welfare has adopted. Since the States are generally required to administer their public assistance programs in a manner which conforms to the requirements of the Social Security Act and Federal regulations lawfully promulgated thereunder (US Code, tit 42, §§ 601-604), the State commissioner may actually be risking a loss of Federal funds by adhering to an interpretation of law which varies from that adopted by the Federal agency (see Hagans v Lavine, supra, at p 530, n 1). Nonetheless, although we remain concerned with the practical consequences of our decision, we cannot permit our concerns to dissuade us from deciding the controversy at hand — whether the petitioner, who has placed her dispute before the New York courts, is, in fact, entitled to the benefits she seeks under existing Federal law. If, as a practical matter, our negative answer to this question places the State of New York at odds with the Federal Department of Health and Welfare, the State is presumably sufficiently equipped to seek an ultimate resolution of the dispute in a more appropriate, Federal forum.

. An “Action Transmittal — Interpretation” is a bulletin sent to the State agencies by the Department of Health and Welfare to advise them of current Federal policy and departmental views regarding the proper application of the public assistance laws. In the instant case, the parties have raised some question as to whether an “Action Transmittal — Interpretation” has the same status as a formal regulation, notwithstanding that it has not been published in. advance in accordance with the Federal Administrative Procedures Act (compare US Code, tit 5, § 553, subd [b], with US Code, tit 5, § 553, subd [a], par [2] ; see, also, Rodriguez v Swank, 318 F Supp 289, affd 403 US 901). Nevertheless, we deem it unnecessary to resolve this dispute, since the rationale underlying our decision in this c9.se applies equally to official regulations and less formal administrative pronouncements by the Federal agency concerning the applicability and effect of Federal law. We note, however, that although the Department of Health and Welfare regards an “Action Transmittal — Interpretation” as having a somewhat lesser status than a formal regulation, it nevertheless considers the former to be as binding upon State agencies as the latter (“Action Transmittal”, SSA-AT-78-28, Department of Health and Welfare, July 11, 1978).

. Although the legislation was not actually enacted until July of 196B, Congress specifically provided that the newly authorized benefits would be payable “after December, 1964” (Public Law 89-97, §306, subd [d]). Thus, the statute expressly contemplated the retroactive payment of benefits.

. We similarly reject petitioner’s contention that our court lacks the power to go beyond the mere enforcement of the Federal rule in' this case and to inquire into the underlying validity of the Federal rule in issue. This contention is based upon a line of cases in which it was held that State courts have no subject matter jurisdiction to review Federal administrative orders (Fieger v Glen Oaks Vil., 309 NY 527, 533-534; Wasservogel v Meyerowitz, 300 NY 125,133-134; Matter of Armand Schmoll, Inc. v Federal Reserve Bank of N. Y., 286 NY 503; but see Leighton v Bearman, 302 NY 865). Whatever the continuing *901 vitality of these cases (cf. Bodrick v Mayfair Constr. Corp., 38 NY2d 926, cert den 429 US 825), however, we cannot agree with petitioner that their holdings should be applied in a unique context such as this, where the States clearly have been given authority concurrent to that of the Federal agency to implement and enforce the provisions of Federal law.