86 N.Y.2d 361 (1995)
657 N.E.2d 247
633 N.Y.S.2d 252
In the Matter of Yvonne Rodriguez, Appellant,
v.
Cesar A. Perales, as Social Services Commissioner of the State of New York, Respondent, et al., Respondent.
Court of Appeals of the State of New York.
Argued April 25, 1995.
Decided June 14, 1995.
Jill Ann Boskey, New York City, and Wayne G. Hawley for appellant.
Dennis C. Vacco, Attorney-General, New York City (Carol Schechter and Victoria A. Graffeo of counsel), for Cesar A. Perales, respondent.
Chief Judge KAYE and Judges SIMONS, LEVINE and CIPARICK concur with Judge TITONE; Judge SMITH dissents and votes to affirm in a separate opinion in which Judge BELLACOSA concurs.
*363 TITONE, J.
Applicants for Federal Supplemental Security Income (SSI) sometimes experience delays of several months or even years before their entitlement to benefits is determined. To ease the severe financial hardships that these delays may occasion, the local public assistance agencies are authorized to furnish eligible applicants with interim assistance and to recoup the outlay from the recipient's "first" or "initial" SSI payment. The issue in this appeal is whether the locality's right to recoupment may be exercised against the entire amount of retroactive SSI benefits paid to a recipient, where, as here, there has been a recalculation of the retroactive benefits due and, as a consequence, the recipient's retroactive benefits have been paid in more than one installment. Adhering to the clear language of the applicable statutes, we conclude that, under the circumstances presented in this case, only the retroactive amount that is initially determined to be due the recipient is subject to local recoupment.
In December of 1987, petitioner applied for SSI, claiming that she was disabled. While she was waiting for her application to be decided, petitioner received interim Home Relief assistance from the New York City Department of Social Services. On March 6, 1990, the Federal agency determined that petitioner was eligible to receive SSI disability benefits. However, according to the agency, petitioner's disability had not begun until September of 1988, and, consequently, she was entitled to a retroactive payment of only $7,652, representing the amount determined to be due for the period from September 1988 through April 1990. Petitioner subsequently commenced an administrative appeal from the Federal agency's *364 determination, arguing that her disability had begun as early as December of 1987.
In the meantime, the City Department of Social Services advised petitioner that it would retain the entire retroactive SSI payment she had been awarded as reimbursement for the interim assistance it had provided.[1] Petitioner's Home Relief case was closed effective May 16, 1990, and petitioner thereafter began receiving monthly SSI benefits.
Petitioner's appeal from the Federal agency's determination was ultimately resolved in her favor when the Secretary of Health and Human Services' Appeals Council concluded that she was actually entitled to disability benefits from December 11, 1987, as she originally had claimed. As a result of this decision, the Federal agency issued an additional retroactive check to cover benefits due petitioner between December 11, 1987 and September 1988. A portion of this check was then claimed by the City as additional reimbursement for the interim Home Relief assistance it had given petitioner before her SSI application was determined.
Petitioner requested a fair hearing before the State Department of Social Services to challenge the City's claim. Petitioner did not dispute that the additional amount claimed by the City was equal to the amount it had granted her in interim Home Relief benefits. Instead, she argued that the City was not entitled to a share of the second retroactive SSI benefit check because the applicable statutes and regulations permitted recoupment only from the "first" or "initial" SSI payment. The Social Services Department rejected petitioner's argument. Petitioner then brought the present CPLR article 78 proceeding to challenge that determination.
Although Supreme Court granted the petitioner the relief she sought, the Appellate Division reversed, holding that the reference to "first payment" in the controlling Federal statute (42 USC § 1383 [g] [2]) was meant "only to set the point in time governing the calculation" and that "the amount to be reimbursed to the local government" is the amount necessary to reimburse it for the interim assistance it provided (205 AD2d 418, 419). In so ruling, the Appellate Division relied, in part, on its policy-based concern that the contrary rule would *365 afford individuals in petitioner's position a windfall solely because "the Social Security Administration made a mistake in calculation * * * and later corrected this error in a second retroactive check" (id., at 419). We now reverse.
As a general rule, SSI benefits are not subject to execution, levy, attachment, garnishment or other legal process (see, 42 USC §§ 407, 1383 [d] [1]). This antiattachment was construed strictly in Philpott v Essex County Welfare Bd. (409 US 413) to prohibit local social services agencies from recouping any interim public assistance provided to SSI recipients by claiming a share of their SSI benefits. However, in 1974, Congress overrode Philpott by enacting 42 USC § 1383 (g), which explicitly authorizes localities to recover interim assistance provided to SSI applicants out of the retroactive benefits they are awarded (Pub L 93-368 § 5). The purpose of this legislation was to provide an incentive to States to furnish financial assistance to needy individuals awaiting disposition of their applications for SSI benefits (see, HR Rep No. 1296, 94th Cong, 2d Sess 3-5, reprinted in 1976 US Code Cong & Admin News 1726, 1729-1730). The precise method Congress chose to effectuate this goal was to exempt from the general antiattachment rule those benefits "that the [Federal agency] has determined to be due with respect to the individual at the time the Secretary makes the first payment" (42 USC § 1383 [g] [2] [emphasis supplied]). It is this language which must be deemed controlling in determining the amount of SSI benefits that are subject to local recoupment.
Petitioner contends that the amount of SSI benefits that may be taken by a locality is limited to that which the Federal agency initially determines is due to the applicant, regardless of any corrective action that may later be taken. This contention is premised on petitioner's view that the underscored language in section 1383 (g) was intended to modify the whole phrase "determined to be due." Respondents, in contrast, argue that the underscored temporal language relates only to the word "due" in that phrase. This minor grammatical difference of opinion has major consequences. If respondents' view is correct, the entire retroactive amount that is owed "at the time * * * [of] the first payment" would be subject to local attachment, regardless of when the determination of the amount owed is made. On the other hand, if petitioner's position is correct, the local interim-assistance provider could attach only the amount fixed by the Federal agency's original decision.
*366 Contrary to the holding of the Appellate Division, we reject respondents' position and conclude that petitioner's proffered construction of 42 USC § 1383 (g) represents the better view. Respondents' construction is unsatisfactory because it would render the first three words of the phrase "determined to be due" superfluous  a result that the rules of statutory construction disfavor. "It is well settled that in the interpretation of a statute we must assume that the Legislature did not deliberately place a phrase in the statute which was intended to serve no purpose * * * and each word must be read and given a distinct and consistent meaning" (Matter of Smathers, 309 N.Y. 487, 495 [citations omitted]).
Moreover, respondents' position has recently been explicitly rejected by the Secretary of the United States Department of Health and Human Services (HHS), the officer who is ultimately responsible for administering the SSI program. In a transmittal that was denominated a "Final Decision" and was dated December 5, 1994, the Secretary resolved a dispute between the New York State Department of Social Services and the Social Security Administration over the latter's policy of sending "corrective" retroactive SSI payments directly to the recipient rather than to the State (US Dept of Health & Human Servs Decision No. 1429, Re: New York State Department of Social Services, Departmental Appeals Board Docket No. A-93-109).[2] The Secretary upheld the policy, noting that direct payment to the State would be unwarranted because "the underpaid benefits, later sent directly to the recipient, would be unavailable for the state to offset amounts which it paid as interim assistance" (id., at 25). In reaching that conclusion, the Secretary reviewed virtually every argument made by respondents here and found them to be unpersuasive (id., at 21-26).[3]
*367 As the agency charged with administering and enforcing the SSI program, HHS is entitled to considerable deference in its construction and application of the program's enabling legislation (e.g., Howard v Wyman, 28 N.Y.2d 434, 438). An agency's interpretation of the statutes it administers generally should be upheld if not unreasonable or irrational (e.g., Matter of Salvati v Eimicke, 72 N.Y.2d 784, 791; Matter of Mounting & Finishing Co. v McGoldrick, 294 N.Y. 104, 108; cf., Kurcsics v Merchants Mut. Ins. Co., 49 N.Y.2d 451). Indeed, respondents expressly recognize the application of this principle here, although their argument rests on the premise that their view of the applicable State provisions rather than the Secretary's view of the parallel Federal provisions should be controlling.
Deference to the Federal agency's construction is particularly appropriate in this dispute involving the Social Security Act, which represents a "`scheme of cooperative federalism'" (Matter of Jones v Berman, 37 N.Y.2d 42, 52, quoting King v Smith, 392 US 309, 316) and ordinarily requires participating localities to comply with the Federal administrative agency's regulations and rulings (see, Hagans v Lavine, 415 US 528, 530, n 1; Matter of Dunbar v Toia, 45 N.Y.2d 764, 766; Matter of Beaudoin v Toia [Jorczak], 45 N.Y.2d 343, 348). While the principle of "cooperative federalism" does not require blind adherence to all Federal directives, sound judicial policy counsels in favor of deference where, as here, the Federal ruling is not irrational or inconsistent with the language of the applicable Federal statute (cf., Matter of Bosh v Fahey, 53 N.Y.2d 896).
Notably, Social Services Law § 158, which implements the Federal recoupment plan, contemplates only that the amount of interim assistance given by the State will be reimbursed "from [the] initial payment" (subd [a]) (emphasis supplied). "Initial payment" is defined as "the first payment of supplemental security income benefits after a person files an application for benefits" (id.). The Social Services Department's regulations simply parallel the language of the enabling Federal legislation (18 NYCRR 353.2; see, 18 NYCRR former 370.7 [a] [2] [repealed eff Nov. 3, 1993]). Thus, like the Federal statute, the governing State provisions authorize recoupment only from the amount initially determined to be due to the recipient *368 and not from any subsequent corrective payments that may be made.[4]
We recognize, as both respondents and the dissenters stress, that limiting the State to reimbursement from the SSI recipient's first payment may produce a windfall for individuals such as petitioner who succeed in obtaining an upward adjustment of their retroactive entitlements as a result of administrative appeals. However, the possibility of a windfall in such cases[5] is not alone a sufficient reason to adopt the rule respondents urge, particularly in view of the language of 42 USC § 1383 (g), the HHS Secretary's contrary position and the fact that the statute does not evince a legislative intent to ensure a one-to-one correspondence between the amount of interim assistance paid and the amount of reimbursement recovered. Indeed, as the HHS Secretary noted in her Final Decision (at 25), the Social Security Administration does not customarily seek a refund from the State when there has been an overpayment in the initial amount sent on behalf of the recipient. Furthermore, any perceived "windfall" effect from the rule limiting the State's recovery out of retroactive SSI payments is mitigated by the fact that the State may have other sources for recovering overpayment (see, e.g., Social Services Law § 158 [d], [e] [i]).
Finally, notwithstanding any undesirable consequences such as the dissent perceives, the applicable Federal statute must be strictly construed in this context, because, as is evident from the associated case law and legislative history, there is a strong underlying Federal policy forbidding attachment of SSI benefits without express legislative authority. Just as remedial *369 legislation in the form of 42 USC § 1383 (g) was necessary to enable the States to recoup interim assistance from the retroactive amount initially determined to be due, so too is specific remedial legislation required to enable localities to recoup by attaching subsequently determined "corrective" payments. Such specific legislation does not presently exist.
For all of the foregoing reasons, we conclude that respondent City was not authorized to recoup its previously unreimbursed interim-assistance outlay from the proceeds of petitioner's Federal administrative appeal. Hence, respondent State Department of Social Services should have directed the City to return any portion of petitioner's second retroactive SSI check that it was withholding.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
SMITH, J. (dissenting).
The issue here is whether the City was permitted to retain reimbursement for interim assistance provided petitioner although such reimbursement was made after the initial Federal SSI payment. Because I believe that the Appellate Division was correct when it determined that such corrective payment was properly made to the City, I dissent and vote to affirm the order of the Appellate Division.
On December 11, 1987, petitioner filed an application for Federal Supplemental Security Income disability benefits (SSI). While her application was being processed, she applied for and received Home Relief interim assistance benefits through the New York City Department of Social Services (City DSS). In April 1990, the Social Security Administration (SSA) determined petitioner eligible for benefits, but only as of September 14, 1988 and made an initial payment of benefits for the period September 14, 1988 through April 1990 directly to City DSS for interim assistance provided petitioner. City DSS inaccurately thought that the payment represented reimbursement for the entire period for which interim assistance was provided (December 11, 1987 though April 1990) and kept the entire payment.
Petitioner appealed SSA's initial determination that eligibility dated from September 1988 as opposed to December 1987, the date of her initial application. In November 1990, the SSA Appeals Council found that petitioner was actually disabled for the period December 11, 1987 through September 13, 1988 and awarded her benefits from that time period. This award of *370 "retroactive benefits" was included in petitioner's thirteenth SSI check and sent directly to City DSS. City DSS again kept the complete thirteenth payment as reimbursement for interim assistance for the entire period December 11, 1987 through April 1990, instead of December 1987 through September 1988. Petitioner requested that City DSS correct its error. After realizing its error, City DSS recalculated the amount of interim assistance provided and remitted the excess to petitioner.
Petitioner, simultaneously, requested a fair hearing to review City DSS's determination to retain any portion of the "non-initial" payment. State DSS upheld City DSS's retention of part of the corrective payment. Petitioner commenced this CPLR article 78 proceeding seeking reversal of State DSS's decision after the fair hearing. The motion court held that the multiple checks issued at different times did not constitute an initial payment within the meaning of Federal and State law. The Appellate Division reversed, holding essentially that SSA's mistake in calculation should not result in a windfall to petitioner allowing her to receive SSI benefits for a period during which she also received Home Relief benefits.
Under the Federal SSI program, monthly Federal benefits are provided to eligible individuals who are aged, blind, or disabled and poor to maintain basic subsistence (42 USC § 1381). These benefits are not subject to attachment without express statutory authority (42 USC §§ 407, 1383 [d] [1]). Determination of an applicant's eligibility for SSI benefits takes time and could in some instances leave applicants without assistance for the period during which their application is being processed. During this "interim" period, applicants may seek assistance from State agencies under the Interim Assistance Program (IAP) (42 USC § 1383 [g]; 20 CFR 416.1901). The Interim Assistance Provisions of the Social Security Act is a program enacted by Congress in 1974 specifically to aid individuals awaiting determination of applications for Federal SSI benefits (id.). Under this program, State and local social service agencies are permitted to recoup interim assistance.
To receive reimbursement for interim payments, a State must agree to pay any excess reimbursement to the recipient (42 USC § 1383 [g] [4] [A]). The Federal regulations provide that when a recipient so authorizes, SSA may withhold a recipient's benefits and when SSA makes the "initial payment" *371 of benefits, send payment directly to the State, provided the State has entered into an appropriate agreement with SSA (20 CFR 416.1904).
Social Services Law § 158 (a) provides the statutory authority for New York State to receive and deduct interim assistance from an SSI recipient's "initial payment." The regulations define "initial payment" as the amount of SSI benefits SSA determines to be payable at the time the first payments of SSI benefits are made (18 NYCRR 370.7 [a] [2]). Although a State or local social service district is permitted to recover for interim assistance provided an individual awaiting determination on an SSI application, the regulation prohibits further recovery where the initial payment is insufficient to fully reimburse such agency for interim assistance. Specifically the regulations provide:
"Upon receipt of an initial payment, the local social services district shall deduct therefrom the amount of interim assistance provided. If the initial payment is less than the interim assistance provided, recoupment cannot be made from subsequent SSI payments" (18 NYCRR 370.7 [c] [3]).
Petitioner argues that the plain language of the Federal and State statues requires a finding that any payments, corrective or otherwise, made after the initial payment are to be paid directly to the recipient. Petitioner's strict reading of the statutes is contrary to the purpose and spirit of the Interim Assistance Program's enactment. States and local social service districts participating in the interim assistance program provide essential financial relief to applicants awaiting eligibility determination for Federal SSI benefits. As participation in the IAP program is voluntary, the possibility of continually losing valuable public resources to applicants receiving double benefits serves little or no incentive for continued State participation.
Essentially, petitioner contends that not only is she entitled to the interim assistance she received from City DSS while awaiting determination of her SSI application, but regardless of an error in calculation resulting in a double outlay of benefits from both City DSS and Federal SSI covering the identical period, she is nevertheless entitled to retain any excess not provided in the "initial payment" or the "first payment" of Federal benefits. This interpretation, however, is counter to the rationale for IAP's enactment. The purpose for *372 which the Federal and State IAP statutes were enacted is that when an applicant is awaiting determination for SSI benefits and receives interim assistance from a State or local social service district, such agency is entitled to recoup whatever assistance has been provided.
The State apparently loses some reimbursement for interim assistance when SSA determines a person is not eligible for such assistance. Further, if a determination is made that an individual is entitled to benefits covering a period less than that for which the State has provided interim assistance, and the initial payment reflects only that period, the State is not permitted to recoup the balance of assistance provided from the recipient. While the statute specifically prohibits recoupment of interim assistance for periods an applicant is found ineligible for Federal SSI, this prohibition does not refer to a double recovery situation provided this petitioner.
Here, SSA made an initial determination of entitlement to benefits for only part of the period for which City DSS provided interim assistance, with payment made accordingly. Subsequently, SSA determined that petitioner was actually entitled to benefits for the entire period that City DSS provided interim assistance and, thereafter, SSA provided benefits on a retroactive basis to cover the period not provided for in the initial payment. In this instance, reimbursement to the State or local social service agency, even if after the first payment, is permissible to avoid the double receipt of benefits to the SSI recipient.
In a recent decision involving a dispute between State DSS and SSA regarding their interagency agreement under the SSI interim assistance program, the Secretary of the United States Department of Health and Human Services determined that SSA's policy of sending "corrective payments" directly to recipients rather than to the State was fully supported by statute. The Secretary concluded that recovery of interim assistance by State and local agencies to retroactive benefits is limited to that initially determined to be due. This conclusion not only frustrates the purpose of the IAP, but implies that the statute intends to provide recipients with, in this case, duplicate benefits. Faced with the unreimbursed costs of administering benefits under IAP, loss of benefits provided during periods when applicants are ineligible for SSI and the absorption of nonreimbursable benefits due to an error in *373 eligibility determination on SSA's part, this conclusion further serves as a disincentive for State and local social service agencies to provide assistance under IAP.
It should be emphasized that the letter decision by the Secretary of the United States Department of Health and Human Services has no application here. The letter states, inter alia, that any corrective payments of SSI benefits, other than the initial or first payment, should be sent not to the City or State but directly to the recipient even though the City or State has made interim payments covered by the corrective payments. Here, unlike the situation in the letter decision, the corrective payments were sent to the City. It is unreasonable to now say that the City must give those payments to a recipient who has received the interim benefits and then find another means of recouping those benefits from that same recipient. Moreover, the New York State regulations contemplate that an initial payment may be made in more than one check. Thus, 18 NYCRR 370.7 (a) (2) states:
"[T]he amount of SSI benefits determined by the Social Security Administration (SSA) to be payable to an eligible individual (including retroactive amounts, if any) at the time the first payments of SSI benefits are made" (emphasis supplied).
Finally, the suggestion by the majority that recoupment can be made by applying Social Services Law § 158 (d) and (e) is not a reasonable alternative to the City's retention of the funds it has received. Those sections provide that a recipient of Home Relief can be required (1) to assign to the State and the social services district any rights of support from any other person or (2) to assist public authorities in establishing the paternity of a child and in efforts to secure assistance from the father.
Accordingly, I would affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] To facilitate the localities' recoupment, 42 USC § 1383 (g) provides that, where an SSI applicant has executed a written agreement, the Federal agency may send the applicant's initial SSI payment directly to the agency that has granted interim assistance.
[2] The Appellate Division did not have the benefit of this "Final Decision" at the time it made its decision on respondents' appeal.
[3] The dissent's assertion that the letter decision "has no application here" is puzzling. It is true that the Secretary's letter concerned the State's dispute with HHS regarding the latter's policy of sending "corrective" lumpsum SSI payments directly to the recipient (see, Internal SSA Program Operations Systems Manual § SI 02003.030A.2), while the lump-sum payment in this case was sent to the local social services agency. However, this fortuity, which apparently resulted from an administrative error on the part of HHS, has no analytical significance. Underlying the issue of whether the payment should be sent to the State or to the recipient is the dispositive question of which party is entitled to the fund. On that question, the Secretary clearly and unmistakably ruled that the corrective payment belongs to the recipient and not the State. That conclusion is directly on point in this dispute.
[4] The dissent's reliance on 18 NYCRR 353.2 (c) (3) is misplaced. Obviously, to the extent that the regulation permits a practice that is inconsistent with either 42 USC § 1383 (g) or Social Services Law § 158, it is invalid and not to be followed. Further, there is no real inconsistency as the cited regulation merely permits the local social services agency to recoup interim assistance from "any check or checks comprising an initial payment" (18 NYCRR 353.2 [c] [3] [emphasis supplied]). The regulation's use of the word "checks" in the plural can readily be interpreted as a means of accommodating SSA's requirement that payments exceeding $9,999.99 be made in multiple checks (Internal SSA Program Operators Systems Manual § SI 02003.030A.2). Construed in this manner, the regulation simply contemplates situations in which the amount initially determined to be due to the applicant exceeds the amount that can be paid through a single check and does not have the broader significance attributed to it by the dissent.
[5] According to the Social Security Administration's submissions to the HHS Secretary, its national rate for erroneous initial underpayments in 1991 (the last year for which statistics were then available) was only 1.1%.