OPINION OF THE COURT
Eileen Bransten, J.
This CPLR article 78 proceeding concerns the efforts of the State and City of New York to maximize their reimbursement from the Federal Government of benefits they have provided to an indigent individual. The Federal Government and the State of New York have each enacted coordinating, and, to some extent, overlapping rules and regulations for providing assistance to indigent individuals. The State and City of New York’s interpretation and application of these Federal and State statutes and regulations have spawned much disagreement, and, consequently, litigation. (See, e.g., Matter of Baez v Bane, 89 NY2d 1 [1996]; Matter of Rodriguez v Perales, 86 NY2d 361 [1995]; Matter of Kreslein v Perales, 204 AD2d 942 [3d Dept 1994].) This article 78 proceeding is another facet of the ongoing disagreement between the State and City of New York, and indigent individuals, as to application of the Federal Social Security Act and New York Social Services Law to the provision of benefits to indigent individuals.
Petitioner James Stevens (Stevens), once a recipient of State Safety Net Assistance, and now a recipient of Federal Supplemental Security Income (SSI), challenges the accounting methodology by which the State and City agencies responsible for administering New York’s Safety Net Assistance Program have reimbursed themselves for Safety Net Assistance payments they initially extended to Stevens but later recouped from the Social Security Administration.
Specifically, Steven seeks a judgment: (1) annulling a December 18, 1998 decision issued by respondent New York *344 State Office of Temporary and Disability Assistance (the State)[1] upholding the “lump sum” accounting methodology utilized by the respondent Commissioner of the City of New York Human Resources Administration (the City)[2] in calculating the amount to reimburse itself for Safety Net Assistance payments the State and City made to Stevens, out of an initial SSI payment the City received from the Social Security Administration on behalf of Stevens; (2) ordering the State and City to recalculate the amount they withheld from Stevens’ initial SSI payment pursuant to a month-to-month accounting methodology allegedly required by the Social Security Administration; and (3) upon such recalculation, ordering the State and City to refund Stevens $1,744 from the initial $11,480 SSI payment.
The State and Federal Programs for Providing Assistance to Indigent Individuals
The State of New York has enacted the Safety Net Assistance (SNA) Program (formerly termed Home Relief) to provide assistance to “financially needy” individuals who do not qualify for the Family Assistance Program (formerly Aid to Families with Dependent Children) and are not otherwise receiving Federal or State aid. (See, Social Services Law § 158 [1], [2].) In New York City, SNA is administered by both the State and the City.
As a condition of receiving SNA, the indigent individual must agree to apply for SSI, if it appears that the individual would qualify for SSI under the criteria set up in the Social Security Act and its implementing regulations. (See, Social Services Law § 158 [2]; 18 NYCRR 370.2 [b] [5].)
There is typically a significant waiting period between the time that the indigent individual applies for SSI and the time SSI is actually paid.[3] Thus, when the Social Security Administration makes a favorable determination on behalf of the indigent individual, it may make payment of benefits retroac *345 tive to an earlier date, upon a finding that the indigent individual was eligible for benefits since this earlier date. The delay in processing applications for SSI applications thus results in the indigent individual receiving an initial retroactive payment covering the months during which the indigent individual was eligible for benefits, and the individual’s application for SSI benefits was pending.
Pursuant to the Social Security Act, the Social Security Administration has agreed to reimburse States for providing “interim assistance” to an indigent individual for the period of time that the individual was entitled to receive SSI and had an SSI application pending. (See, 42 USC § 1383 [g] [3]; 20 CFR 416.1904.) New York SNA payments made to an indigent individual prior to the individual’s receipt of SSI are considered interim assistance; thus the State and City may seek reimbursement from the Social Security Administration for SNA payments when the indigent individual ultimately begins receiving SSI. (See, 42 USC § 1383 [g] [3]; 20 CFR 416.1902; 18 NYCRR 353.2 [a] [1]-[2].)
To facilitate reimbursement to the States of interim assistance payments the States make during the time an SSI application is pending, the Social Security Administration has agreed to send the indigent individual’s initial retroactive SSI payment directly to the local social service agency which advanced the interim assistance, so long as the State has entered into an interim assistance payment agreement with the Social Security Administration. (See, 42 USC § 1383 [g]; 20 CFR 416.1904.)
Concomitantly, in New York, SNA recipients are required to execute a form authorizing the Social Security Administration to make their initial retroactive payment of SSI benefits to the State, and are also required to agree to permit the State and/or City to reimburse themselves for SNA provided to the indigent individual during the period of time that the indigent individual was eligible for SSI. (See, Social Services Law §§ 211, 158 [2]; 18 NYCRR 353.2.)
Once the initial retroactive payment is made to the City, the City and State reimburse themselves for the amount of interim assistance they have provided the indigent individual, and then must pay over any excess from the initial lump-sum payment to the individual, within 10 days of receipt. (See, 42 USC § 1383 [g] [4]; 18 NYCRR 353.2.)
*346 Stevens’ Experience with the SNA and SSI Programs
Stevens applied for and received SNA from New York State and City from 1996 through 1998. As a requirement of receiving SNA, Stevens was required to, and did, apply for SSI. In the fall of 1998, the Social Security Administration notified Stevens that his application for SSI had been approved, retroactive to December 31, 1996. On September 28, 1998, the Social Security Administration notified Stevens that his back SSI payments, from January 1997 forward, totalled $11,480, and that the Social Security Administration had paid this amount to the New York City Department of Social Services.
The State and City then reimbursed themselves for SNA payments to Stevens by totalling the amount of SNA payments they had made to Stevens during all of the months that he was eligible for SSI and had an SSI application pending, and deducting that total amount from the initial retroactive payment the City received from the Social Security Administration.
However, a comparison of the monthly SNA payments made to Stevens during this time, and the initial SSI payment he received for these months showed that, in certain of the months in which Stevens received SNA benefits, he ultimately did not receive an equivalent amount of SSI. Instead, the amount he received in SSI was less than the amount he had received from SNA.[4] In other months, Stevens received less in SNA than SSI.[5]
Employing its lump-sum reimbursement methodology and totalling up the amount of SNA benefits provided to Stevens, the City claimed SNA reimbursement of $14,567.80. However, the Social Security Administration sent the City only $11,480 for Stevens’ initial retroactive SSI payment. The City thus informed Stevens that it had applied the entire $11,480 toward the $14,567.80 in SNA the State and City had extended Stevens, and found that Stevens was not entitled to any of the $11,480 initial SSI payment.
Stevens was afforded an administrative “fair hearing” to challenge the City’s contention that he was not entitled to any of his initial SSI payment. At the fair hearing, Stevens claimed *347 that, in accordance with Social Security Administration regulations, as interpreted by the Secretary of Health and Human Services, the State and City were required to net out amounts received from the Social Security Administration on a month-to-month basis, rather than doing lump-sum calculations.
Stevens thus contended that in any month in which the State and City paid more to Stevens in SNA than his SSI allotment, the State and City were required to absorb the SNA overpayment. Similarly, Stevens contended, in any month in which the Social Security Administration paid Stevens more in SSI than he received in SNA, the State and City were required to reimburse him the difference in payments. Stevens concluded that if the State and City had done the month-to-month calculation allegedly required by the Social Security Administration, he would have received $1,744 of the $11,480 initial SSI payment.
On December 18, 1998, the State issued a decision upholding the City’s determination that Stevens was not entitled to receive any amount from his initial SSI payment. In the fair hearing decision, the State held that “[t]here is nothing in the State or Federal law that requires [the City] to make an individual monthly comparison of the retroactive SSI to the interim assistance and thereupon calculate Appellant’s entitlement to a portion of the retroactive SSI depending on whether or not the Public Assistance exceeds the SSI for any individual month.” (Petition, exhibit A, at 4.)
In this proceeding, Stevens repeats his contention that the Secretary of the United States Department of Health and Human Services has interpreted the relevant Social Security Administration’s Programs Operations Manual System (POMS) to require a monthly comparison of payments for reimbursement purposes, and that an aggregate payment comparison is not sufficient to comply with Social Security Administration requirements. Further, Stevens alleges that the Court of Appeals decision in Rodriguez v Perales (86 NY2d 361 [1995], supra) is controlling and requires that the State and City defer to the Secretary of Health and Human Services’ interpretation of the Social Security Administration’s rules concerning reimbursement payments.
In opposition to the petition, both the State and the City allege that this court should defer to their interpretation of the Federal and State statutes governing reimbursement of interim assistance. The State and City further allege that their interpretation of the Federal, State, and City statutes and regulations at issue is not arbitrary and capricious, and therefore may not be rejected by the court.
*348 In addition, the City alleges that the POMS, as interpreted by Stevens and by the Secretary of the United States Department of Health and Human Services, is inconsistent with the underlying Federal and State statutes at issue, and should not be given any deference. Finally, the City claims that because Stevens had a hearing before an Administrative Law Judge, this CPLR article 78 petition raises a “substantial evidence issue” and this court should transfer the petition to the Appellate Division, First Department, pursuant to CPLR 7804.
The City’s Request to Transfer this Article 78 Petition
Initially, this court must determine whether to transfer this article 78 proceeding to the Appellate Division, First Department. Pursuant to CPLR 7804 (g), if an article 78 proceeding raises an issue of “substantial evidence,” then the trial court is required to transfer the proceeding to the Appellate Division for determination. The substantial evidence issue is explained in CPLR 7803 (4) as “whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.” Whether a substantial evidence question is raised is determined solely by reference to the article 78 petition. (See, Matter of Iza Land Mgt. v Town of Clifton Park Zoning Bd. of Appeals, 262 AD2d 760 [3d Dept 1999]; Matter of Bryan v Hammons, 173 Misc 2d 894, 895 [Sup Ct, NY County 1997].)
The issue in this article 78 petition, as framed by Stevens, is a purely legal question — whether the State’s and City’s construction and application of Federal and State law to Stevens’ undisputed factual situation were arbitrary and capricious. Thus, even though the State held a “fair hearing” in connection with Stevens’ claims, no substantial evidence issue is raised, and transfer to the Appellate Division would be improper. (See, Matter of Iza Land Mgt. v Town of Clifton Park Zoning Bd. of Appeals, 262 AD2d, supra, at 760; Matter of Suffolk County Dept. of Pub. Works v Public Serv. Commn., 229 AD2d 652 [3d Dept 1996].)
The Merits of the Petition
Turning to the merits of the petition, the court notes that this is not the first time a SNA recipient has challenged the State’s and City’s “lump-sum” reimbursement methodology. In Matter of Goodwin v Perales (120 AD2d 527 [2d Dept 1986]), petitioner Goodwin alleged that the State’s reimbursement *349 method, was a denial of equal protection under the Federal and State Constitutions. (Matter of Goodwin v Perales, 120 AD2d, at 527.) The Second Department explicitly rejected this claim, holding that the State’s interpretation of the Social Security Act and the New York Social Services Law is “both rational and in accordance with the express language of the applicable statutes and regulations” and that these statutes and regulations “do not require a month-by-month recoupment analysis, as suggested by the petitioners.” (Matter of Goodwin v Perales, 120 AD2d, at 528; see also, Matter of Shire v Perales, 120 AD2d 531 [2d Dept 1986] [same]; Matter of Triant v Perales, 120 AD2d 534 [2d Dept 1986] [same].)
The Second Department has twice reaffirmed its holding in Matter of Goodwin v Perales (supra) in Matter of Giordano v Perales (124 AD2d 585 [2d Dept 1986]) and Matter of Vitarelle v Amrhein (128 AD2d 885 [2d Dept 1987]).
In his petition, Stevens does not dispute that, 14 years ago, the Second Department, upheld the State’s lump-sum recoupment methodology. Stevens claims, however, that nine years after the Second Department’s decision in Goodwin, the Court of Appeals decided Matter of Rodriguez v Perales (86 NY2d 361 [1995], supra), and the Secretary of the United States Department of Health and Human Services issued a final decision interpreting the POMS governing States’ recoupment of interim relief. Stevens claims that both the Rodriguez decision and the Secretary of the United States Department of Health and Human Services’ decision compel the conclusion that the State and City must recoup SNA on a month-to-month basis.
The Court of Appeals Interpretation of the New York Social Services Law and Social Security Act Recoupment Provisions
In a 1995 case relevant to this article 78 proceeding, the Court of Appeals addressed New York’s policy and procedure for reimbursing itself for SNA payments made to SSI recipients. In Matter of Rodriguez v Perales (supra), an indigent individual challenged New York’s attempt to reimburse itself the entire amount of SNA it extended to the individual from retroactive SSI benefits, where the Social Security Administration had recalculated the indigent individual’s benefits and consequently paid additional retroactive benefits after the initial SSI payment. (Matter of Rodriguez v Perales, 86 NY2d, at 363.)
*350 The trial court granted the indigent individual’s article 78 petition, and held that, in accordance with the Social Security-Act and New York Social Services Law, the State was only entitled to recoup SNA benefits from the initial retroactive SSI payment, and not any subsequent payment, even if the subsequent payment resulted from a recalculation of retroactive SSI. The Appellate Division, First Department, reversed the trial court, and held that the State could reimburse itself out of subsequent payments resulting from a recalculation of retroactive payments. (See, Matter of Rodriguez v Perales, 205 AD2d 418 [1st Dept 1994].)
The Court of Appeals reversed the Appellate Division, concluding that the State could only reimburse itself out of the initial payment received from the Social Security Administration, regardless of any subsequent recalculation of the initial SSI payment. In reaching this conclusion, the Court of Appeals first noted that, in general, SSI benefits are not subject to attachment, garnishment, or other legal process; thus any legislation in derogation of this general rule must be strictly construed. (Matter of Rodriguez v Perales, 86 NY2d, supra, at 365.)
The Court of Appeals next reviewed the language of 42 USC § 1383 (g) (2), which permits the States to recoup interim assistance payments from benefits “that the Commissioner of Social Security has determined to be due with respect to the individual at the time the Commissioner of Social Security makes the first payment of benefits.” The Court of Appeals strictly construed this language to literally mean the recipient’s initial payment, and refused to graft any additional meaning into the statute. (Matter of Rodriguez v Perales, supra, at 366.)
Finally, the Court of Appeals placed particular reliance upon ■ a “final decision” issued by the Secretary of the United States Department of Health and Human Services (the Secretary), dated December 5, 1994, in which the Secretary explicitly rejected New York’s claim that it should be able to reimburse itself for SNA from recalculated initial SSI payments. In relying upon the Secretary’s interpretation of, and decision concerning, the governing statutes, rather than the State’s contrary interpretation of these statutes, the Court of Appeals stated that:
“As the agency charged with administering and enforcing the SSI program, HHS is entitled to considerable deference in its construction and application of the program’s enabling legislation * * * An agency’s interpretation of the statutes it *351 administers generally should be upheld if not unreasonable or irrational * * *
“Deference to the Federal agency’s construction is particularly appropriate in this dispute involving the Social Security Act, which represents a ‘ “ ‘scheme of cooperative federalism’ ” ’ and ordinarily requires participating localities to comply with the Federal administrative agency’s regulations and rulings.” (Supra, at 367.)
The HHS Decision Applies to this Article 78 Proceeding
In the same “final decision” relied upon by the Court of Appeals in Rodriguez (supra), the Secretary also held that the State of New York is required to do a “month to month” accounting for reimbursement purposes, rather than a lump-sum reimbursement, to ensure that New York does not reimburse itself for any month in which New York provided SNA to an indigent individual but the Social Security Administration did not provide SSI to that individual. (See, Petitioner’s mem of law, exhibit B [hereinafter HHS Decision].)
In reaching this conclusion, the Secretary reviewed the relevant Federal statutes and legislative history of those statutes, as well as the policy considerations advanced by both the Social Security Administration and the State of New York. (See, HHS Decision, at 9-17.) The Secretary also placed a great deal of reliance upon the Federal regulation requiring that the Social Security Administration prorate an individual’s first monthly SSI payment to correspond to the amount of days remaining in the month after the date upon which the individual was initially determined to be eligible for SSI, and requiring the States to similarly prorate their requests for reimbursement of interim assistance during that month. (See, 20 CFR 416.421, 416.1902.)
The Secretary compared the rationale for requiring States to prorate their request for reimbursement for the first month that SSI is afforded, and concluded that this rationale was equally applicable to requiring the States to perform month-to-month accounting: “[the] rationale underlying proration of interim assistance reimbursement applies with equal force to the month-to-month accounting issues. Just as Congress’s amendment to section 1611(c) [of the Social Security Act] calling for proration of SSI benefits justifies proration of interim assistance reimbursement, so similarly Congress’s demand that SSI eligibility be determined on a monthly basis justifies the determination of interim assistance reimbursement on [a] monthly basis.” (HHS Decision, at 14.)
*352 While the HHS Decision specifically addressed New York’s policy of reimbursing itself for SNA payments made to indigent individuals for months in which the indigent individual had not received any SSI, there is no logical distinction between that policy and the policy challenged here — New York’s policy of reimbursing itself for monthly SNA payments which are greater than the indigent individual’s SSI allotment for that month. In both cases, New York reimburses itself more than the SSI payment for that month.
Indeed, while the HHS Decision did not directly resolve the issue presented herein, in discussing the States’ permission to reimburse themselves from SSI, the Secretary did note that “the amount of interim assistance reimbursement is limited to the amount of state assistance paid in that month.” (HHS Decision, at 17, n 9 [emphasis supplied].)
As the Court of Appeals held in Rodriguez (supra), this court must give the HHS Decision “considerable deference.” In light of the HHS Decision, this court finds that the Social Security Act, the Social Services Law, and their implementing regulations all require that, in determining the amount of reimbursement to which it is entitled from an SSI recipient’s initial payment, the State of New York must employ a month-to-month accounting methodology, and may not seek to reimburse itself in any month for an amount greater than the indigent individual’s SSI payment for that month.
This court recognizes that there are significant policy considerations for permitting New York to recoup every dollar of interim assistance it has given to an indigent individual out of that individual’s SSI, and that a month-to-month accounting may result in a “windfall” to the indigent individual. However, these policy considerations have been rejected, both in substance and on relevance grounds, by both the Court of Appeals and the Secretary.
In Rodriguez (supra), the Court of Appeals flatly rejected the Appellate Division’s “policy-based concern” that strict interpretation of the relevant statutes would result in a “windfall” to the indigent individual, noting that the Social Security Act “does not evince a legislative intent to ensure a one-to-one correspondence between the amount of interim assistance paid and the amount of reimbursement covered.” (Supra, at 368.) The Court of Appeals further noted that “any perceived ‘windfall’ effect from the rule limiting the State’s recovery out of retroactive SSI payments is mitigated by the fact that the State may have other sources for recovering overpayment.” (Supra, at 368, citing Social Services Law § 158 [d], [e] [i].)
*353 Similarly, in the HHS Decision, the Secretary found that New York’s argument that month-to-month accounting would provide a disincentive to a State’s participation in the interim assistance program was both factually unfounded and “irrelevant.” (HHS Decision, at 17-21.)
As in Rodriguez (supra) and the HHS Decision, this court finds that the “policy” implications of the petitioner’s demand that the State and City perform a month-to-month reimbursement accounting should not, and will not, determine the outcome of this article 78 proceeding. Instead, and in accordance with the HHS Decision and the Court of Appeals decision in Rodriguez, this court grants Stevens’ article 78 petition.
In accordance with the foregoing, it is adjudged that petitioner’s article 78 petition is granted; and it is further adjudged that the December 18, 1998 decision issued by respondent New York State Office of Temporary and Disability Assistance upholding the “lump sum” accounting methodology utilized by the respondent Commissioner of the City of New York Human Resources Administration in calculating the amount to reimburse itself for SNA payments the State and City made to Stevens, out of an initial SSI payment the City received from the Social Security Administration on behalf of Stevens, is annulled; and it is further ordered and adjudged that the State and City shall recalculate the amount they withheld from Stevens’ initial SSI payment pursuant to a month-to-month accounting methodology, shall not reimburse themselves in any month for SNA payments made to Stevens in excess of Stevens’ SSI payment for that month, and shall reimburse Stevens for the surplus in SSI payments for any months in which Stevens received a larger SSI payment than his SNA payment.

. Respondent Brian J. Wing is the Commissioner of the State Office of Temporary and Disability Assistance, the State agency responsible for the administration of the Safety Net Assistance Program of the State of New York.

. Respondent Jason A. Turner is the Commissioner of the City of New York Human Resources Administration, the City agency responsible for the administration of the Safety Net Assistance Program in New York City, and, pursuant to the New York Social Services Law, responsible for complying with Safety Net Assistance Program directives issued by the State.

. For example, in this proceeding Stevens applied for SSI benefits in 1996 but did not begin receiving benefits until 1998.

. Thus, for example, in September of 1997, Stevens received $892.80 from SNA, but was only paid $570 in SSI for that month.

. In September of 1998, Stevens received no SNA, but received $580 in SSI. In September through August of 1997, Stevens received only $352 in SNA, but was later allowed $570 in SSI.