*939 OPINION OF THE COURT
Emily Jane Goodman, J.
In this CPLR article 78 proceeding, petitioner 27 Jay Street, LLC seeks to annul an order rendered by respondent New York City Loft Board, which denied petitioner’s abandonment application.
Petitioner is the owner of premises located at 19-27 Jay Street, Brooklyn, New York (premises), which is considered a multiple dwelling subject to article 7-C of the Multiple Dwelling Law (Loft Law). This application concerns apartment 205 in petitioner’s building (apartment), which petitioner sought to have declared abandoned under the Loft Law and the Rules of the City of New York (RCNY).
I. Background
Apartment 205 was rented to nonparty Kelly Bush for a term from September 2000 to August 2002 pursuant to a written lease. Bush continued to reside in the premises until September 2006, at which time she moved out. In February 2007 petitioner filed the application with the Board seeking a finding that the apartment had been abandoned by Bush pursuant to applicable law. (Petition, exhibit A.) Such a finding would take the apartment off the list of apartment units covered by the Loft Law.
The matter was placed on the calendar of the Office of Administrative Trials and Hearings for a hearing. After a number of delays where attempts to serve and include Bush in the proceedings failed, part of a procedural history not germane to the present proceeding, a hearing was held before the assigned Administrative Law Judge (ALJ) on June 11, 2008. As Bush had still not answered the application, after having been served, the ALJ determined to proceed to an inquest with only petitioner in attendance. The petitioner provided evidence at that inquest.
In a report and recommendation dated June 26, 2008 (the report) (petition, exhibit O), the ALJ recommended that the application be granted, and the apartment be declared abandoned. In a letter dated March 13, 2009, the Board sent petitioner a proposed order which, as relevant, rejected the ALJ’s determination, and denied the application. (Id., exhibit E) The order was issued to this effect on March 27, 2009. (Id., exhibit Q.) Petitioner then commenced this proceeding to annul that order.
The requirements needed in order to find that a loft apartment has been abandoned are found in 29 RCNY 2-10 (f). The *940 Loft Board agreed with the ALJ that the version of 29 RCNY 2-10 (f) applicable at the time of the filing of the application should be applied. The rules have since been amended.
29 RCNY 2-10 (f) (2) defines abandonment as “the voluntary relinquishment of possession of a unit and all rights relating to a unit with the intention of never resuming possession or of reclaiming the rights surrendered.” 29 RCNY 2-10 (f) (3) lists the factors to be considered when determining whether a unit has been abandoned. They read as follows:
“(i) the length of time since the occupant allegedly abandoned the unit;
“(ii) whether the occupant owed rent as of the time the occupant allegedly abandoned the unit and whether court proceedings to attempt to collect this rent have been installed;
“(in) whether the occupant’s lease for the unit has expired;
“(iv) whether the occupant provided notice of an intent to vacate or requested permission to sublet the unit for a specific period of time;
“(v) whether the unit contained improvements which were made or purchased by the occupant and whether the occupant was reimbursed for those improvements;
“(vi) whether any prior harassment findings have been made by the Loft Board concerning the occupant(s) of the unit or whether any harassment application remains pending;
“(vii) whether any violations or notices to appear pursuant to the Loft Board’s Minimum Housing Maintenance Standards have been issued;
“(viii) whether the owner has made affirmative efforts to locate the occupant to attempt to purchase rights pursuant to Multiple Dwelling Law § 286(12) or improvements pursuant to Multiple Dwelling Law § 286(6); and
“(ix) whether an inspection of the unit by the Loft Board staff indicates that the unit is presently vacant.”
At the hearing, petitioner, according to the ALJ’s report, provided the following evidence. Bush advised petitioner in July 2006 that she would be vacating the apartment. In a fax from Bush to petitioner’s managing agent, Bush advised that agent *941 that she had removed her personal effects from the apartment. Bush and the premises’s superintendent conducted a “walk through” of the apartment on August 31, 2006, at which time Bush returned all sets of her keys. The superintendent later called petitioner’s managing agent to inform it that Bush had moved, and that the apartment was “broom clean.”
In September 2006 Bush provided a new address to petitioner, and called petitioner’s managing agent to inform it that she had received a check for her full security deposit. Petitioner has had no further contact with Bush.
II. Discussion
Generally, courts will not interfere with the determinations of agencies unless “there is no rational basis for the exercise of discretion or the action complained of is arbitrary and capricious.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [internal quotation marks omitted].) “This settled standard requires the Court to assess whether the action in question was taken ‘without sound basis in reason and . . . without regard to the facts.’ ” (Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189 [1994], quoting Pell, 34 NY2d at 231; see also Matter of Soho Alliance v New York State Liq. Auth., 32 AD3d 363, 363 [1st Dept 2006] [“a reviewing court is not entitled to interfere in the exercise of discretion by an administrative agency unless there is no rational basis for the exercise, or the action complained of is arbitrary and capricious”].)
All of the above notwithstanding, if there has been a hearing, and a question has arisen as to whether there was substantial evidence to support the determination, the matter is not to be addressed by this court, but must be turned over to the Appellate Division, First Department. (Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation, 98 NY2d 758 [2002]; Matter of Sureway Towing, Inc. v Martinez, 8 AD3d 490 [2d Dept 2004].)
In the present case, the facts are not in dispute, and the issue is not whether there is substantial evidence to support the Loft Board’s determination, but rather, whether the agency has applied the rules it is constrained to follow to the undisputed facts so as to achieve a reasonable result. Therefore, the matter is one for this court to address. And, in reviewing the Loft Board’s interpretation of the RCNY, this court is reminded that, while *942 “statutory construction is the function of the courts” (Matter of Yong-Myun Rho v Ambach, 74 NY2d 318, 321 [1989] [internal quotation marks and citation omitted]), where a rule does not run counter to a statutory provision “[a]n agency’s interpretation of the statutes it administers generally should be upheld if not unreasonable or irrational.” (Matter of Rodriguez v Perales, 86 NY2d 361, 367 [1995].)
Petitioner contends that the Loft Board has “totally distorted the definition of ‘Abandonment’ as defined in its own rules as codified in the RCNY, and in the generally accepted definition of same, as defined in Black’s Law Dictionary.” Petitioner states that both 29 RCNY 2-10 (f) (2) and Black’s Law Dictionary define abandonment similarly as a voluntary surrender, without intent to reclaim, which does not require an element of conflict or dispute. However, petitioner makes no argument as to why 29 RCNY 2-10 (f) (3), which lists the factors to be used in making the determination of abandonment, is in violation of the Loft Law or any other law. On one hand petitioner accepts 29 RCNY 2-10 (f) (2), but rejects 29 RCNY 2-10 (f) (3), without providing any statutory analysis as to why 29 RCNY 2-10 (f) (3) violates the Loft Law or any law. The definition provided by Black’s Law Dictionary is irrelevant, because unless petitioner demonstrates that 29 RCNY 2-10 (f) (3) is in violation of law, that rule would govern. Defendant has cited no case which holds that 29 RCNY 2-10 (f) (3) is in violation of law. Contrarily, at least one appellate case defers to the factors in 29 RCNY 2-10 (f) (3) (see EPDI Assoc. v Conley, 7 AD3d 755, 756 [2d Dept 2004] [“the determination of whether an interim multiple dwelling is considered abandoned rests squarely within the purview of the New York City Loft Board . . . (see . . . [29 RCNY] § 2-10 [f] [3])]).”
This court finds that the Board’s determination was rationally based on 29 RCNY 2-10 (f) (3), as applied to the facts. Rather than an abandonment, the Loft Board found that “the [Tenant’s] departure was in the nature of a departure at the expiration of a lease term (in this case, the termination of a month-to-month tenancy) by a tenant in good standing in the ordinary course . . . (Proposed order at 3.) As the Board further noted, “[t]o hold otherwise would mean that any turnover of tenants of an interim multiple dwelling upon a lease expiration or upon the termination of a month-to-month tenancy would constitute abandonment.” (Id.)
Petitioner complains that the Board is reading into the rules a requirement that there be an element of “conflict” between *943 the landlord, and the tenant before an abandonment could be found — a requirement that is, allegedly, not there. However, instead of a requirement of a “conflict,” the Board reasonably found that there must be, essentially, some showing of an unwillingness on the part of the tenant to conform to the requirements of the tenancy in quitting the apartment, which would distinguish situations involving turnovers in the ordinary course at the end of a term.
The Board cites to several agency determinations to show that an abandonment must follow such a course. For instance, in Matter of Twenty-Nine Second, LLC (Loft Board docket No. LB-0124), the tenant was found to have abandoned the unit by, among other things relevant to 29 RCNY 2-10 (f) (3), leaving the premises some years previous to the application; allowing her lease to expire; and failing to pay $8,924.96 in back rent. (Respondents’ mem of law, appendix A.) In Matter of 315 Church St. Corp. (Loft Board docket No. LB-0116), the tenant, among other things, had left the premises some years earlier to the petition; failed to return the keys to the apartment; owed considerable back rent; left with all his possessions and told landlord he was not coming back. (Id.) In Matter of Ovid, LLC (Loft Board docket No. LB-0079), the tenant had vacated the unit at least a year earlier to the petition; it was unclear whether rent was owed; no notice had been given to the landlord of any intent to vacate; and the tenant could not be located. (Id.)
In contrast, the Board offers the case Matter of 67 Vestry LLC (Loft Board docket No. LB-0153/LC-0156), in which an abandonment was not found. In 67 Vestry, the tenant provided the landlord with two months’ notice of its intention to vacate the premises, several months before the lease was to terminate; did not owe any rent at the time; and its departure was in compliance with its lease terms. The Board in 67 Vestry held that the vacature was “a simple turnover in the Unit’s occupants,” and that “to hold otherwise would mean that any turnover in the tenants of an interim multiple dwelling would constitute abandonment.” (Respondents’ mem of law, appendix B.)
Petitioner disputes the propriety of the Board’s reliance on 67 Vestry, citing what it considers to be distinguishing aspects of that case. However, this court need not rely on the findings in that matter to decide the present proceeding; the conclusion is the same. The vacatur of a loft unit in the ordinary course of the lease should not be equated to an abandonment. Bush left the apartment at the end of her month-to-month tenancy; did *944 not owe any rent; cooperated with petitioner’s superintendent as to the vacatur of the apartment; left the apartment in good repair; turned over the keys to the apartment; and requested and received her security deposit back. Under these circumstances, and applying the nine factors in 29 RCNY 2-10 (f) (3), the agency did not err in finding that Bush did not abandon the apartment.
Respondents brought up a new argument in their opposition papers which was not before the Board at the administrative level, i.e., that Bush had no rights in the apartment at the end of the lease term to relinquish. This argument has no place in the present proceeding, and will not be addressed. (See Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991] [“(i)t is the settled rule that judicial review of an administrative determination is limited to the grounds invoked by the agency”].)
Accordingly, it is adjudged that the petition is denied, and the proceeding is dismissed.